Mr. Justice Johnson
 

 delivered the opinion of the Court.
 

 This vessel was stranded on Block Island, in an alleged effort to reach a port of the United States. The vessel and cargo have been seized by the Collector of Newport, for supposed violations of the trade laws of this country, and an information was accordingly filed, to subject the whole to condemnation, in the District Court, for Rhode. Island District.
 

 This claim of the United States has been opposed by three classes of competitors. The vessel and
 
 *167
 
 cargo, it . appears, are Spanish property, and were captured on the south western coast of Cuba, by the Puyerredon, a private armed brig, bearing the Hag of the. Buenos Ayrean Republic, and commandédby Captain James Barnes. Being armed, and well calculated for a privateer, she was manned with a complement of the privateer’s men, about thirty in number, and her original commander, and all except four of the Spanish crew, removed. Thus equipped, it appears that she cruised, as a tender to the Puyerredon, for about two months, during which time another Spaniard was added to her crew, and on the 8th May, w,hen in lat.
 
 32 30, N.
 
 and long. 74, from London, the crew rose upon the officers, subdued them, put them on board the first vessel they met with, and steered their course for this continent.
 

 Thus circumstanced, Capt. Barnes has libelled in behalf of the captors, the Spanish Vice Consul in behalf of the original Spanish owners* and the crew of the Bello Corrünes have libelled for a compensation by way of salvage, to which they suppose themselves entitled, in the event of restitution being decreed to the original owners.
 

 To these several claims it is objected on behalf of the United States, that restitution cannot be decreed to the Spanish Vice Consul, because he is not in-that capacity a competent party in Court to assert the rights of individual subjects; nor, in favour of the captors, because the privateer was originally fitted out in the United States, and is still owned by American citizens; nor, in favour of the salvors, because
 
 *168
 
 they have forfeited their claim to salvage by spoliation, and an attempt to smuggle.
 

 A foreign consul has a right toclaimorlibol, in
 
 rem,
 
 where the rights of property of his fellow subjects are in question, without any special authority from those for whose bene fit he acts.
 

 As these suggestions open the whole case, it shall be disposed of by considering them severally in their order, only remarking
 
 en passant,
 
 that though they were all. sustained, it would avail the United States nothing 5 since, without evidence sufficient to. sustain the criminal charge, it would only follow that the proceeds of the property libelled, must lie in the registry of the Court, until a proper claimant shall make his appearance.
 

 On the first point made by the Attorney General, this Court feels no difficulty in deciding, that a Vice Consul duly recognised by our Government, is a competent party to assert or defend the rights of property of the individuals of his nation, in any Court having jurisdiction of causes affected by the application of international law. To watch over the rights and interests of 'heirsubjects, wherevertho pursuits of commerce may draw them, or the vicissitudes of human affairs may force them, is the great object for which Consuls are deputed by their sovereigns ; and in a country where laws govern, and justice is sought for in Courts only, it would be a mockery to preclude them from the only avenue through which their course lies to the end óf their mission. The long and universal usage of the Courts of the United States, has sanctioned the exercise of this right, and it is impossible that any evil or inconvenience can flow from it. Whether the powers of the Vice Consul shall in any instance extend to the right to receive in his national charac
 
 *169
 
 ter, the proceeds of property libelled and transferred into the registry of a Court, is a question rest~ ing on other principles. In the absence of specific powers given him by competent authority, such a right would certainly not be recognised. Much, in this respect, must ever depend upon the laws of the country from which, and to which, he is deputed. And this view of the subject will be found to reconcile the difficulties supposed to have been presented by the authorities quoted on this point. Considering, then, the original Spanish interest as legally represented, the questions are, whether that interest is not f~rfeited to the United States, or superseded by the superior claims of the capturing vessel.
 

 But he cannot 1eceiye actual restitution with. out a special procuralion from the parties interested.
 

 A Citizen of the (7. States cannot claim, in their Courtz, the property of foreign nations in amity with the Ti. S.,cap. tured by him us war, wheresoc.. ver the capturing vessel may have been equipped, or by whomsoever COmmis8ioned.
 

 This is not the ordinary case of a capture made under the, taint of an illegal outfit. The decision of this Court must rest upon a very different principle. In those cases, the national character of the claim.. ant is immaterial. He has violated the neutrality of this country, and cannot shelter himself under his commission, or his allegiance, however unquestionable his right, individual or national, would have been otherwise. But can a citizen of this country, whb has violated its laws, ever be recogni-sed in our Courts as a legal ëlaimant of the fruits of his own wrong ? We are of opinion he c~nnot, and it therefore becomes material to determine what~ is the national character of the claimants, under the capture made by the Puyerredon.
 

 At the time of this vessel's first sailing from Bat-timore, she was unquestionably American owned and commanded. During the time of her cruising
 
 *170
 
 under the name of the Mangoree, it is not pretended that she changed owners. The legality of her conduct at that period has been defended altogether on the ground of her taking the flag of Buenos Ayres, being commissioned in a foreign state, and.her commander, Barnes, assuming the character of a citizen of the power that had commissioned him. It is not until her arrival at Buenos Ayres, in 1817, that any change of property in the vessel has been set up in proof. At that time, it is contended, she was set up at auction, and changed owners, passing into the hands of a Mr. Higginbotham, a citizen of the United States, married and domiciled at Buenos Ayres.
 

 If this fact had been satisfactorily made out. in evidence, it would have drawn this Court into the consideration of some questions of great nicety, which have never yet received a solemn adjudication in this Court. But the evidence to support this pretended change of property is so wholly unsatisfactory, that the Court rejects it; for, the ordinary solemnities of such transfers are too well known, to admit the belief that in this instance, the change of property, had it been real, would not have been effected or commemorated by written documents. .
 

 This Court, then, proceeds upon the assumption that the Puyerredon is still, in reality, American owned, and they are also of opinion, that she must be held to be American commanded ; since, even if the doctrine could be admitted, that a man’s aller giance may be put off with his coat, it is very cleaf that Mr. Barnes’ citizenship is altogether in fraud of the laws of his own country. His family has never
 
 *171
 
 been removed from Baltimore, and his home has been always either there, or upon the ocean.
 

 The question then is, whether thus circumstanced, the claim in behalf of the owners and mariners of the Puyerredon, can be sustained.
 

 We are decidedly of opinion it cannot.
 

 By the 2d section of the 14th article of the treaty with Spain, “ Citizens, subjects or inhabitants” of the United States, are strictly prohibited from taking “ any commission or letter of marque, for arming any ship or vessel, to act as privateers against the subjects of his Catholic Majesty, or the property of any of them, from any Prince or State with which the said King shall be at war.” And it is further provided, “ that if any person of either nation shall take such commissions or letters of marque, he shall be punished as a pirate!”
 

 Whatever difficulties there may exist under the free institutions of this country, in giving full efficacy to the provisions of this treaty, by punishing such aggressions as acts of piracy, it is not to be questioned that they are prohibited acts, and intended to be stamped with the character of piracy: and to permit the persons engaged in the open prosecution of such a course of conduct, to appear, and claim of this Court, the prizes they have seized, would be to countenance a palpable infraction of a rule, of conduct, .declared to be the supreme law of the land.
 

 : Some doubts have been suggested on the use of the words. “
 
 State at
 
 war” with-Spain. This Court would not readily lean to favour a restricted con
 
 *172
 
 struction of language, as applied to the proiisions of a treaty, which always combines the characteristics of a contract, as well as a law: but it is not necessary to examine the grounds of these doubts, as applied to the present case; because this treaty has been enforced by the provisions of the act of Congress of the 14th June, 1797, ~o as to leave no doubt of its extension to the case of cruising against Spain, under a commission from the new states formed in her colonies.
 

 In case of an illegal capture, in violation of the neutrality of this country, the property of the lawful owners cannot be forfeited for a breach of its revenue laws, by the captors, or persons who have rescued the property from their pot. session.
 

 • Citizens of the United States, •therefore, present themselves to this Court to demand restituti~n of a prize which they had made in violation of the most solemn stipulations of a treaty, and provisions of a law of their own country, and of which they have been dispossessed by their own associates in guilt. Under such circumstances, this Court cannot hesitate to reject the claim, and adjudge the property to the original proprietors.
 

 This view of the subject obviates the necessity of examining the reality and effect of the alleged r,es-cue on behalf of the origitial owners, with a view to the question of restitution; but it still becomes necessary, with a view to the question of forfeiture, and th~ merit of the alleged salvors. With regard to the former, it is very, clear, that supposing the rescue to have been real and compleat, the Spanish `consul ought not to be precluded from his election, whether to put his claim upon the ground, that the interest of those wh~m he represents was nevei legally devested, or that it was afterwards legally recovered, In the' one case, there is no ground for
 
 *173
 
 affecting it with the forfeiture, because of the conduct of the crew; and in the other, some question may be made,-how far the property was affected by the illegal acts of those who, at that time, held in the'rightof the owners. - But even in this latter view of the state `of the . property, we are of opinion, that the forfeitnre~ was `not incurred; since, although it be supposed, that the property was in' custody of those who held for the Spanish owners, it was `not held by those~to' whom the Spanish owr~ers had entrusted. the' ~vessèl and cargo. And' this is the only ground upoii'which the acts of the ship's company are `made to. produce forfeitures. ~f the interest of `shippers or `ship `owners. For,' besides the considerations drawn from the great predominance of the force detached' from the privateer, in the effort to recapture, `the few- men of her own crew, were gratuitous actors. Their contract with the owners had cea~ecl, an4 they assumed the character of voluntary agents, `-whose conduct the owners might or might notadopt, according tothèir own views or interests.
 

 The ights of salvage may be forfeited by the• misconduct cd the salvors.
 

 As to the claims of the salvors, it may be remarked, that maritime Courts always approach them with great• benignity and favour. Yet, in proportion to the inclination to favour where there is merit, is the indignation with which they. view every indicatioi~ of a disp9sition, to take advantage of the unfortunate. Spóliation, and even gross neglect, may forfeit all the pretensions of salvors to compensation.
 

 In the case before us, it is not too much to pronounce the claim of those. of the crew of the Puy-
 
 *174
 
 erredon who libel for salvage, to be not only groundless but impudent; for, besides spoliation, smuggling, and the grossest irregularities, it is perfectly clear, from the pilot’s evidence, that they run the vessel on shore purposely. So, that whatever may have been the reality of their benevolent designs towards the Spanish owners originally, their subsequent conduct not only casts a doubt over their candour, but devests them of all pretensions to compensation.
 

 Nor do the .five Spaniards who composed a part of ihe crew of the Bello Corrunes, at the time she was stranded, and who were not of the capturing crew, escape being involved in the suspicions which fasten on their associates.
 

 It is a melancholy truth, too well known to this Court, that the instruments used in the predatory voyages carried on under the colours of the South American States, are among the most abandoned and profligate of men. Under the influence of strong interests or fears, the mind of man too often yields, even where the moral sense still exerts its influence; but hold out to one of these practised adventurers in a course of plunder, the hope of gain on the one hand, and the fear of imprisonment for piracy on the other, and what are the chances for truth !
 

 That these men were selected from the Spanish crew to associate with those of the capturing vessel, is a circumstance not very favourable to their characters and conduct, and it would require some strong evidence of their innocence to remove from.them the suspicion of a voluntary association with the enemies of their King. Joining in, or even setting on
 
 *175
 
 foot or promoting the recapture, (facts which rest wholly on their own veracity,) can prove very little in their favour, since such mutinies are become everyday occurrences whenever such a crew find themselves in possession of a valuable cargo. Nor will the inference in their favour be very strong from their resorting ,to the Consul of their country, since it was the only course which held' out a chance of gain, or of escape from the imputation both of piracy and smuggling.. There is no evidence to separate their conduct from a compleat identification with the rest of the crew, except what is obtained from their own testimony. Yet it is suggested, that they may still make theirinnocence and merits to appear; and as the parties have signified their consent that the case may be opened in the Court below as to this class of salvors, the case will be remanded to the Circuit Court, for further proceedings, so far as the claim for salvage is concerned.
 

 Decree accordingly.
 

 Decree. This cause came on to be heard on the transcript of the record of the Circuit Court for the District, of Rhode Island, and was argued by counsel: on consideration whereof, it is ordered and decreed, that the Decree of the said Circuit Court in this case be, and the same is hereby affirmed, with costs, against Barnes and others, except so far as relates to the libel for salvage of Emanuel Rodriguez, Emanuel Josef, Emanuel Barbaras, An
 
 *176
 
 tonio Josef, and Josef Isnages, who formed no part of the crew of the private armed brig Puyerredon: , 1 „ , , and as. to so much of the said Decree as relates to the said libellants Emanuel Rodrigues and others, js further pecreed and ordered, by consent of parties, by their counsel, that the Decree of the said Circuit Court be, and the same is hereby reversed and annulled. And it is further ordered, that the said cause be remanded to the said Circuit Court for farther inquiry. And that the proceeds of the said Bello Corrunes and cargo lie in the Registry of the said Circuit Court, to be paid over, under the order of that Court, to the Spanish owners, as interest shall be made to appear.
 

 The Two Friends, 1
 
 Rob.
 
 281.