MERRITT *v.* ONE PACKAGE OF MERCHANDISE AND OTHER PACKAGES OF
MERCHANDISE.[1]

SAME *v.* ONE CASE OF WOOL AND OTHER MERCHANDISE.

SAME *v.* TWO PACKAGES OF MERCHANDISE.

LEWIS *v.* SIXTY-FIVE PACKAGES OF MERCHANDISE.

(*District Court, E. D. New York.* December 27, 1886.)

1. SALVAGE—SALVED PROPERTY BROUGHT INTO UNITED STATES—SALVAGE CLAIMS
—CUSTOMS DUTIES—PRIORITY.
    Where property is salved on the high seas, and brought by the salvors within
    the limits of the United States, the salvage claims are entitled to priority over
    the claims of the government for duties.

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

2. SAME—IMPORTED GOODS—CUSTOMS LAWS.

Goods so brought into the United States are not imported goods, in the sense of the customs laws, so as to necessarily attach the right to duties.

3. SAME—SALE OF SALVED PROPERTY — EQUITABLE RIGHT OF GOVERNMENT TO BE PAID DUTIES.

But where the goods so brought within the United States, subsequently, by virtue of a sale, pass into consumption within the United States, an equitable right on the part of the government to be paid duties arises, not taking precedence, however, of the salvage claims.

In Admiralty.

*Geo. A. Black*, for Israel J. Merritt.

*Mark D. Wilber*, U. S. Dist. Atty., for the United States.

*Whitehead, Parker & Dexter*, for William Lewis.

BENEDICT, J. Three of the proceedings above named are proceedings *in rem*, instituted by Israel J. Merritt, against a quantity of merchandise, being part of the cargo of the steam-ship Oregon, which steamer, having been in collision, was sunk in the sea outside the territorial limits of the United States, and was there abandoned. The cargo in question was, by means of divers, rescued from the steamer as she lay on the bottom in deep water of the sea, and was brought by the libelant into the port of New York. No owner appeared to claim the property, nor was the owner known. These proceedings were therefore instituted to obtain an adjudication upon the amount of salvage due for the rescue of the property, and a condemnation of the property to pay the same. The last of the above actions was instituted against certain other merchandise by certain pilots, by whom the merchandise was found floating upon the sea, near the place where the Oregon sunk, and the same saved and brought into the port of New York. No owners appearing or being known, they also instituted proceedings *in rem*, for the purpose of obtaining an adjudication as to the amount of salvage due them for their service, and a condemnation of the property for the payment of the same. Process *in rem* was issued in the respective suits, upon the return-day of which the marshal made a return in each case that he had attached the property proceeded against. Subsequently, by an order of the court, made upon consent of the libelants, and the district attorney then appearing for the United States, the property was sold as perishable, at public auction, and the proceeds brought into the registry. No person has appeared in the action, except the district attorney of the United States. He has intervened in behalf of the United States, and filed a claim in behalf of the United States, and an answer setting up that duties had become due the United States by reason of the premises, which should be paid out of the proceeds of the sale of the goods, prior to any payment of salvage to the salvors. The duties so claimed by the United States are sufficient to absorb all the proceeds, and, by consent, the cases have been submitted to the court upon the questions raised by the intervention of the United States.

In determining these questions I remark, first, that no doubt can be entertained as to the jurisdiction of the court to direct as to the disposition of the fund in the registry of the court. The return of the marshal,

that he had attached the goods by virtue of the process issued against the property, shows that if, at any time, the collector had acquired possession of the goods, such possession was abandoned when the goods were taken possession of by the marshal by virtue of the process. The fund in the registry is therefore proceeds of property in custody of the court, sold while in custody, to save it from destruction. Moreover, the property was sold, and the proceeds brought into the court, by consent of the United States. And the United States, by the district attorney, has intervened in the action, and submitted to the court the question as to the right of the United States to be paid duties out of the fund. The jurisdiction of the court to determine the question at issue is therefore clear.

The controversy here, then, relates to a fund lawfully in the registry of the court, and the parties contesting are, on the one hand, salvors, claiming to be paid out of the proceeds of salved goods the amount of a salvage lien, and, on the other, the United States, claiming to be paid duties out of the fund. No owner or consignee of the goods is before the court. In determining the question thus presented, it is to be remarked that no forfeiture of the goods to the United States had been incurred prior to the sale. *The Waterloo,* Blatchf. & H. 114; *The Bello Corrunes,* 6 Wheat. 152; *The Josefa Segunda,* 5 Wheat. 338. No seizure of the goods as forfeited was ever made, and the United States has made no claim based on a forfeiture. Nor could these goods be treated as subject to the statutory provisions applicable to goods imported into the United States from a foreign country. Brought into the United States under the circumstances narrated, these goods are not imported goods, in the sense of the customs laws, so as to necessarily attach the right to duties, (*The Concord,* 9 Cranch, 387;) and no lawful seizure of them for non-payment of duties could be made. Furthermore, it does not appear that the goods in question ever became chargeable with duties. It was open to the salvors, at any time before the goods passed out of their custody, to transport them to a port not in the United States, without payment of duties. It was also open to the owners of the goods, at any time before the goods were sold, to appear, give a stipulation for value, and remove the goods from the United States, without payment of duties. From the time of the taking of the goods by the marshal into his custody, until they were sold and delivered, the goods were in the custody of the law, and while in such custody no charge of any kind could attach to them. The United States, therefore, never acquired an interest in, or lien upon, the goods in question. The most that can be claimed in behalf of the United States is that, inasmuch as the goods passed into consumption within the United States, by reason of the sale directed by the court, there arose by reason of the sale an equitable right on the part of the United States to be paid duties out of the proceeds of the sale, which right can be enforced in this court, because the proceeds of the sale of the goods are in its registry. Such a right, I am inclined to conclude, has been acquired by the United States. The case of *The Concord,* already cited, points to such a conclusion. That case differed from this,

because there the owner of the goods was the party contesting, and the goods were sold at his instance. In that case, therefore, the sale might well be considered to have been equivalent to a sale for consumption by the owner, for his own benefit. Here the goods were sold, not by the owner, or for his benefit, but because a sale was necessary to prevent the total destruction of the property, and consequent loss, not to the owners of the property, for they had abandoned, but a loss to salvors who had rescued the property from the sea, and had a salvage lien upon the property. In this case, therefore, there is, perhaps, room to contend that no right to duties arose from the sale of the goods. I am inclined, however, to hold, as already stated, that, even in a case like this, the United States can properly claim an equitable right in the proceeds of the goods to the amount of the duties.

But it by no means follows that such a claim in behalf of the United States is entitled to priority of payment over the claim of the salvors. No case to which I have been referred has so decided. The case of *The Waterloo*, already cited, does not so decide. There it was by consent that the duties were paid first. The case of *The Concord*, already cited, does not so decide; for there the question was between the United States and the owners of the goods, who had benefited by a sale of the goods for consumption. In the absence of controlling authority to the contrary, I have no hesitation in holding that, as between salvors and the United States, in a case like this, the claim of the United States for duties is not entitled to priority of payment over the claim of the salvors for salvage. In such a case the maxim, "He that asks equity must first do equity," applies. Here, if the United States receive any duties at all, it is solely because of the exertions of the salvors. At the time the lien of the salvors attached to these goods, they were subject to no charge for duties. The only foundation for any claim on the part of the United States is the fact of a sale of the goods for consumption, compelled by the perishing condition of the goods themselves. To permit such a claim to be paid out of the proceeds to the detriment of the salvors would surely be unjust. The position of the United States before the court is that of a petitioner, asking a court of admiralty to charge proceeds of salved goods with an equitable lien for duties. Equity requires that, before obtaining such relief, the United States must acknowledge the priority of the meritorious claim of the salvors, without whose exertions there would have been no proceeds at all.

This view of the case doubtless renders unnecessary a decision of the question discussed in the argument, whether the duties should be calculated as in the case of unclaimed goods, or ascertained under section 2928 of the Revised Statutes, which section, by the way, seems to contemplate a case where there is an owner or consignee to take an appeal, and not a case like this, when there is no owner, importer, or consignee, or any agent of such parties, but only salvors, holding possession of the goods for their own interest, who have no right whatever by virtue of section 2928, nor as far as I can see, any right to enter the goods under any section.

My conclusion, therefore, is that the salvors are entitled to be paid their salvage and their costs out of the fund in the registry, prior to any payment of duties out of the fund, and that next in order of payment is the claim of the United States for duties. I do not now fix the amount of the salvage award, because the facts are not all before me, and because the view I have taken of the law may render it desirable for the United States to be heard upon the question.