VUJIC et al. v. YOUNGSTOWN SHEET & TUBE CO.

(District Court, N. D. Ohio, E. D.   June 19, 1914.)

No. 8863.

AMBASSADORS AND CONSULS ⟨⟫5—POWERS AND DUTIES—RIGHT TO RECEIVE MONEYS DUE UNDER WORKMEN'S COMPENSATION ACT.

Under the Austro-Hungarian constitution, consular regulations, and laws, a consul of that country is, within his district, the standing, fully authorized, and qualified personal and immediate representative for all purposes of a citizen of his country, residing at home, having any interest to be cared for within the consular district, and without a specific power of attorney he is entitled to receive moneys due citizens and residents of his country under the Workmen's Insurance Act of Ohio (Act June 15, 1911 [102 Ohio Laws, p. 524]), unless the party called upon to make payment has received notice that the persons entitled to payment have specifically and unmistakably selected, through a power of attorney, some other representative.

[Ed. Note.—For other cases, see Ambassadors and Consuls, Cent. Dig. §§ 12–15; Dec. Dig. ⟨⟫5.]

At Law. Action by Nevena Vujic and others against the Youngstown Sheet & Tube Company. Judgment for plaintiffs.

Reed, Eichelberger & Nord, of Cleveland, Ohio, for plaintiffs.

Hine, Kennedy & Manchester, of Youngstown, Ohio, for defendant.

KILLITS, District Judge. Dusan Vujic, a citizen of Austria-Hungary, was killed while in the employ of the defendant, leaving Nevena, his wife, and Victomir, his infant son, his next of kin, who remain in the old country. The decedent lost his life under circumstances which entitle the next of kin to the benefit of the provisions of the Workmen's Insurance Act of Ohio; the defendant having paid to the Industrial Commission of the state of Ohio the insurance premium in that behalf as provided by law.

Suit was brought by Ernest Ludwig, consul for Austria-Hungary, as the official representative and next friend of the beneficiaries. By answer it is admitted that the beneficiaries are entitled to receive compensation under the law of the state and that that amounts to the sum of $2,984.78. But the question is raised whether the consul is qualified to receive the payment of this sum by way of discharge of the obligation, without receiving from the beneficiaries a proper special authorization therefor.

The extent of the right of consuls in this country to intervene respecting the estates of deceased citizens of their respective countries, and to take part in the administration thereof, has been definitely established by the decision of the Supreme Court in the case of Rocca v. Thompson, 223 U. S. 317, 32 Sup. Ct. 207, 56 L. Ed. 453, and it is unnecessary to consider other decisions which are collated and commented upon in that. The Attorney General of Ohio has rendered an opinion to the Industrial Commission adverse to the right of this particular consul, Mr. Ludwig, to acquit the commission in circumstances

⟨⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

similar to those at bar, without special authorization from the beneficiaries residing abroad, and in that opinion, so far as it goes, and upon the facts on which it is based, we are inclined to concur.

The Ohio law is so drawn as to require for safety the distributive shares of beneficiaries to be paid directly to the beneficiaries, or to such unquestionable representatives of them, that there will be the least opportunity for a diversion of the compensation from the specific application designed by the statute. It is obvious, as suggested in the Attorney General's opinion, that the analogy between the question of taking care of the administration of a deceased national's estate by the consul of his country and the right of the consul to receive distribution of an estate is not very close. The Attorney General and this court join in recognizing, however, the convenience and the certainty of distribution through officers of unquestioned integrity of the compensation to beneficiaries which would follow if existing circumstances warranted the claim of the consul.

Examining all the cases and the discussions therein contained (for citation of which we refer to the opinion in Rocca v. Thompson, supra, except that the case of In re Holmberg's Estate [D. C.] 193 Fed. 260, is not therein considered) and reflecting on the demands of international comity, as well as the texts of treaties, we have considered that involved in this question was a determination as far as possible of the exact functions of the Austro-Hungarian consul respecting his relation to people of his country residing at home, to determine whether or not the law clothes him with the same character of conclusive personal representation that would ensue if he were specifically clothed for this particular case with power through a power of attorney executed by the beneficiaries; for it is conceded by the defendant, the Youngstown Sheet & Tube Company, and by the Attorney General in his opinion, that payment could safely be made by the Industrial Commission to the consul on a specific power of attorney.

In the old case of The Bello Corrunes, 6 Wheat. 152, 5 L. Ed. 229, cited by the Attorney General pertinently to the point that, upon the facts discussed in his opinion, there was no authority in the consul to act without specific authority in the receipt of distributive shares, the Supreme Court, on pages 168–169 of the opinion, say that the long and universal usage in this country has sanctioned the exercise of the right of a consul to intervene to protect the interests of nationals in this country, and that it is impossible that any evil or any inconvenience can flow from such practice. In Rocca v. Thompson so much of the authority of The Bello Corrunes has been modified, as we consider these cases, to the end that where some peculiar state law is in the way, such as the act of California, providing for a public administrator, the consular right must lose its preference. However, the court in its opinion in The Bello Corrunes says:

"Whether the powers of the vice consul shall, in any instance, extend to the right to receive, in his national character, the proceeds of property libeled and transferred into the registry of a court, is a question resting on other principles. In the absence of specific powers given him by competent authority, such a right would certainly not be recognized."

Has the Austro-Hungarian consul specific powers pertinent to the question before the court given him by competent authority? There have been stipulated into this record for this court's information translations of and a compendium of the provisions of the Austro-Hungarian constitution, the consular regulations of the dual monarchy, and the laws thereof bearing upon the matter before the court. Without quoting from these laws we make this summary of their provisions:

All diplomatic and commercial representation abroad is under the control of a ministry of foreign affairs, having complete representative authority for both the kingdom and the empire; that the consuls are charged specifically with the duty of representing the interests in the districts to which such consuls are accredited of all citizens of the dual monarchy residing in the home country, and to take charge of any money and valuables of any kind whenever necessary and incidental to their intervention in the estates of citizens of their country, and specifically to collect and dispose of distributive shares of estates and balances due in the settlement of the affairs of their nationals in the countries to which they are accredited.

The provisions of these laws and regulations are so ample, and drawn to cover such a variety of circumstances, that they leave the court no other alternative than to assume that the consul of the dual monarchy within his district is the standing, fully authorized, and qualified personal and immediate representative, for all purposes, of a citizen of his country, residing at home, having any interest to be cared for within the consular district, and that this authority is so complete and so unmistakable that a specific power of attorney from a home-residing citizen of his country, for whom he assumes to act here, is neither necessary to strengthen it nor capable of adding any additional force; that this power should be recognized in precisely such cases as that before us, unless, prior to an acceptance of it, the party called upon to recognize it should have received notice that the principal had specifically and unmistakably selected, through a power of attorney, some other representative.

We are of the opinion, therefore, that for the Industrial Commission of Ohio to pay over to Mr. Ludwig, as Austro-Hungarian consul, the amount agreed to be due the widow and infant son of Dusan Vujic, deceased, there is not only clear authority of law, but that so to do would meet every requirement of the Ohio law under consideration, and that the consul should be recognized in this instance as a representative of Nevena Vujic and Victomir Vujic, clothed with as full power and authority in the premises as if he had indeed their particular powers of attorney.