### HUDSON et al. v. 450 TONS OF BITUMINOUS COAL.

(District Court, D. Maine, S. D. October 1, 1922.)

Salvage ☞21, 41—Rights under contract or on lien held not lost by fraudulent conduct.

The use by libelants, who had contracted to remove a cargo of coal from a stranded vessel, of a small quantity of the coal, not exceeding a ton, for trial with a view to purchasing the cargo if satisfactory, *held* not to constitute embezzlement or fraudulent conduct which deprived them of their right to recover on the contract, or to a lien, under the rule in salvage cases.

In Admiralty. Suit by Alfred H. Hudson and others against a cargo of 450 Tons of Bituminous Coal. Decree for libelants.

Nathan W. Thompson, of Portland, Me., for libelants.
Gerry L. Brooks, of Portland, Me., for claimant.

HALE, District Judge. The libelants, stevedores and contractors, are bringing this suit to assert and enforce a lien for freight upon a cargo of coal. They allege that, in May, 1922, they contracted with the claimant for taking the coal from the steamship Middlesex, then aground upon Willard's Rock, off Cape Elizabeth, and for carrying the coal into Portland and discharging it on Holyoke's Wharf; that, in pursuance of their contract, they proceeded with their lighters to the steamship, lightered 450 tons of coal from the vessel, and carried it from the ship to the wharf, for which they should receive, according to their contract, the sum of $2.25 per ton; and that for the amount of their charges they have a lien upon the coal.

The claimant admits the contract, and that the libelants, in pursuance of it, carried much the larger part of the coal to Holyoke's Wharf. He says he is not liable, however, because the libelants embezzled a certain part of the coal while they were carrying it. He puts

his defense upon the ground that the contract in question was a salvage contract, and that, by this misconduct in embezzling a certain part of the coal, they have forfeited their right of recovery.

The claimant sets up that the coal embezzled by the libelants consisted of certain coal used by the libelants on their lighter, while rendering services, and of a few tons of coal carried by libelants, but not delivered upon the wharf from the ship, in accordance with the contract.

The case was referred to Mr. Hall, the admiralty master, who has found that the evidence sustains the allegations of the libel, and that libelants used their best endeavors to perform their part of the contract; that they landed on Holyoke's Wharf a quantity of coal in excess of the 450 tons taken from the steamship Middlesex; that they took from the cargo of the Ajax a small quantity of the coal to try, with a view of purchasing the cargo, or part of it, for their use, if it proved satisfactory; that the quantity of coal so taken was not over one ton, probably less. It appears that there were also three or four tons of coal put on the Atlas which were not discharged on Holyoke's Wharf; but the proofs tend to show that this small amount of coal was not enough to make it worth while going up to Holyoke's Wharf to discharge; and the master finds that this coal "remained on board the Atlas when she was chartered and taken over by the claimant from the libelants."

The claimant excepts to the master's report, and makes a general defense upon the proofs. It is clear from the evidence that the libelants did use a small quantity of coal; that Capt. Baker, having charge of the lighter for the libelants, gave instructions to Mallett, the engineer, to take "only enough to try it," telling him that they were thinking of buying the coal; that, following this instruction, his engineer took only some of the sweepings from the deck. I think the amount which the master has found to have been used in this way was rather larger than was actually taken.

It is not necessary to discuss the evidence relating to the three or four tons of coal taken by the libelants from the Middlesex, but not delivered on Holyoke's Wharf. I am satisfied that the master is correct in his finding that the coal remained on board the Atlas when she was taken over by the claimant from the libelants, after the services had been rendered. With reference to this charge I find that the claimant has not been deprived of coal by anything shown in evidence.

The proofs do not sustain the charge made by claimant of tortious "appropriation of coal by the libelants to their own use, and without accounting for same or making any offer of restitution."

In salvage cases, fraudulent misconduct and lack of good faith on the part of the salvors effects a forfeiture of salvage. In The Elizabeth and Jane, 1 Ware, 35, Fed. Cas. No. 4,356, Judge Ware considered this subject and said: "Positive fraud, as embezzlement, is punished by a forfeiture of salvage." Judge Ware then comments on the case before him, which showed that the salvors had been guilty of false pretenses and fraudulent representation, tending to impose a belief of imaginary dangers and hardships in the salvage service. In many cases

the courts have held the same doctrine, where there has been a lack of good faith on the part of the libelants. The John Perkins, 3 Ware, 89 Fed. Cas. No. 10,252; The Bello Corrunes, 6 Wheat. 152, 5 L. Ed. 229; The Barque Island City, 1 Black, 129, 17 L. Ed. 70.

In U. S. v. Youtsey, 91 Fed. 864, 869, in speaking for the Circuit Court, Judge Taft held that, in order to substantiate the charge of embezzlement, it must appear that there was an intent to injure or defraud and a purpose of doing a wrongful act.

In the case before me the proofs show no fraud and no lack of good faith on the part of the libelants. The small amount of coal used by the libelants consisted of the sweepings of the floor, and was used with entire good faith and with no intent to fraudulently deprive the claimant of his property.

In my opinion the contract itself is not shown to be a contract of salvage; but, even though the contract should be held to disclose an element of salvage, the proofs utterly fail to show any such misconduct of the libelants as to prevent them from recovery. The master has seen and heard the witnesses, and has made a full and adequate report. Upon carefully reviewing the proofs, I think he is correct in his conclusions. He finds that the libelants are entitled to recover the sum of $1,012.50, the freight on 450 tons of coal at $2.25 per ton, less the value of one ton of coal, $8.50, leaving a balance of $1,004.

· The report of the master is affirmed. I find that the libelants are entitled to judgment, in accordance with the findings of the master, for $1,004, with interest from August 1, 1922, at 6 per cent. per annum, and that they are entitled to a lien upon the coal delivered in pursuance of their contract.

A decree may be entered in accordance with this finding, with costs for the libelants. The charges of the admiralty master are made a part of the costs.