ANATOLE BUXHOEVEDEN, Plaintiff, *v.* ESTONIAN STATE BANK et al., Defendants.

Supreme Court, Special Term, Queens County, April 15, 1943.

*Kirlin, Campbell, Hickox, Keating & McGrann* for Estonian State Bank, defendant.

*Borris M. Komar* for plaintiff.

FROESSEL, J. This is a motion by the Acting Consul General of the Republic of Estonia in New York and in charge of the legation of said Republic in the United States of America, made in behalf of the defendant, Estonian State Bank, (1) to vacate the order of this court entered February 15, 1943, which directed the entry of judgment *by default* in favor of the plaintiff against the said Bank, and severed the action as to the remaining defendant; (2) to vacate the judgment entered pursuant to said order in the total sum of $126,039.27; and (3) to allow said defendant to defend this action and serve its answer, and for further and different relief as to the court may seem just and proper.

The basic question of law presented by this application is the extent of the right of a Consul General of a foreign nation, at peace with this country, but completely occupied by an enemy, to protect and guard in our courts the rights and property of one of his own nationals, an Estonian corporation in which the said Republic owns a majority-share interest, and which, if indeed it has knowledge of this action, is itself manifestly unable, because of present unprecedented world conditions, to defend the same or to take any steps specifically to authorize such defense.

The judgment is predicated on the rather unusual claim of the plaintiff that his assignors were entitled to certain payments under a will creating a trust fund, which will was made in Estonia over a century ago, in 1837, by one Count Alexander Buxhoeveden, to operate in perpetuity. Plaintiff commenced this action by obtaining a warrant of attachment on December 3, 1941, and caused the same to be levied on funds of the defendant bank on deposit with the National City Bank of New York. The affidavits of service show that the six weeks' publication was commenced on December 19, 1941, pursuant to an order of this court, dated December 10, 1941, and a copy of the summons and complaint was mailed to the defendant bank at *Tallinn, Estonia,* on December 16, 1941, five days after our country declared war on Germany. (55 U. S. Stat. 796.)

Subsequently a number of preliminary and jurisdictional applications were made to this court, resulting in three appeals to our Appellate Division. The first appeal was from an order (1) granting conditionally the Consul's motion on behalf of

the defendant bank to vacate the warrant of attachment and (2) denying plaintiff's cross motion for an order directing the attorneys to prove their authority to appear for the defendant bank. The court held: "As matter of law, upon the undisputed facts disclosed in the record, Kaiv, the Acting Consul General of Estonia, was vested with authority to make, through Messrs. Kirlin, Campbell, Hickox, Keating & McGrann, his attorneys, on behalf of the defendant, the motion which resulted in the order appeal from." (*Buxhoeveden* v. *Estonian State Bank, Appeal No. 1,* 265 App. Div. 966.)

The next appeal was from an order (1) granting the motion of the defendant bank and the Consul General, appearing specially, to vacate the warrant of attachment and the levies made thereunder and (2) denying plaintiff's cross motion to strike out the appearance of the attorneys for said bank and Consul. The Appellate Division reversed this order, but held (*Buxhoeveden* v. *Estonian State Bank, Appeal No. 3,* 265 App. Div. 966): "In our opinion (1) this is an action at law for money had and received by respondent bank to the use of the plaintiff's assignor; (2) the papers upon which the warrant of attachment was granted are sufficient in law to warrant the granting thereof; and (3) Johannes Kaiv, Acting *Consul General, had full authority on behalf of the defendant to make the motion to vacate the warrant,* and Messrs. Kirlin, Campbell, Hickox, Keating & McGrann had full authority to make said motion on behalf of respondents." (Italics supplied.)

The third appeal was from an order granting the motion of the Consul General, appearing specially, to vacate the purported service of the summons and complaint on him. The Appellate Division affirmed said order without opinion. (265 App. Div. 966, Appeal No. 2.) Thereafter an *ex parte* application was made by the plaintiff for judgment by default, resulting in the order and judgment which are the subject of this application.

The Consul General contends that he has the right and it is his duty under international law, under the Civil Code of Estonia by virtue of the right of "*negotiorum gestio*", and under the treaty between the United States and the Republic of Estonia (Treaty of Friendship, Commerce and Consular Rights, proclaimed May 25, 1926, 44 U. S. Stat. 2379), to protect and preserve the rights and property of the defendant bank by the instant application, notwithstanding the fact that jurisdiction of the defendant bank could not be obtained in the first instance by service of process upon the Consul General. In that connec-

tion he claims that while he does not come within the provisions of section 229 of the Civil Practice Act, relating to service of process on foreign corporations, he is a " representative " as that expression is used under section 217 of the Civil Practice Act, the statute under which this application is made. He further urges that inasmuch as prior to the time a copy of the summons and complaint was mailed to the defendant bank, the Republic of Estonia was, in the first instance, occupied by the military forces of the Union of Soviet Socialist Republics and, later, by the armed forces of the German Reich, it is quite improbable that the summons and complaint herein were ever received by the defendant bank; that said bank, which is the central bank of the Republic of Estonia, has no representative in this country other than the Consul; that the officers and other persons who would normally act in its behalf are all in enemy-occupied territory; and that no one can communicate with the defendant bank to ascertain the truth or falsity of the plaintiff's claim.

In view of the foregoing, the Consul maintains that he is authorized to make this application and to receive the relief asked, to the extent that it is necessary to protect and preserve the rights and property of the said bank, and virtually all that he seeks is that " plaintiff be required to adduce proof of his claim ". In this connection, he points out that the proof to establish plaintiff's claim is insufficient in many respects; that the documentary evidence is inadmissible, at least in the form that it was presented on the inquest; and that there is no evidence whatever of *facts* upon which a promise of the defendant bank could be based, either express or implied.

The plaintiff disputes the Consul's contentions throughout, and maintains that he has no authority to appear for the said bank either under international law, Estonian law, or by virtue of the treaty between the United States and the Republic of Estonia, notwithstanding the fact that plaintiff's counsel, on the application by the Consul to vacate the purported service of process herein, took the position that said Consul was properly served and had authority to appear for the defendant bank (fol. 37, record on third appeal hereinbefore referred to). Plaintiff, through his counsel, further urges that the Consul fails to show any meritorious defense to the action, and that while " plaintiff is a man of means and substance ", and his claim is fully protected by the warrant of attachment, " two years have passed since Estonia was invaded ", and plaintiff now desires to recover the amount claimed; that if restitution is necessary he is in a position to make the same.

In my opinion, the position of the Consul General should be sustained, both on principles of international law as well as under the provisions of the treaty between this country and Estonia. In the leading case upon this subject, *The Bello Corrunes* (6 Wheat. 152), the Supreme Court of the United States, whose Chief Justice was then JOHN MARSHALL, stated the rule applicable here in the following language (JOHNSON, J., p. 168): " On the first point made by the Attorney General, this Court feels no difficulty in deciding, that a Vice Consul duly recognized by our Government, is a competent party to assert or defend the rights of property of the individuals of his nation, in any Court having jurisdiction of causes affected by the application of international law. To watch over the rights and interests of their subjects, wherever the pursuits of commerce may draw them, or the vicissitudes of human affairs may force them, is the great object for which Consuls are deputed by their sovereigns; *and in a country where laws govern, and justice is sought for in Courts only, it would be a mockery to preclude them from the only avenue through which their course lies to the end of their mission.* The long and universal usage of the Courts of the United States, has sanctioned the exercise of this right, and it is impossible that any evil or inconvenience can flow from it. Whether the powers of the Vice Consul shall in any instance extend to the right to receive in his national character, the proceeds of property libelled and transferred into the registry of a Court, is a question resting on other principles. In the absence of specific powers given him by competent authority, such a right would certainly not be recognized." (Italics supplied.)

Textbook and digest writers support this rule. In Borchard's " Fiore's International Law Codified ", at section 508, he states the rule thus: " Consuls must always be considered as authorized to protect the interests of absent or incompetent citizens of the state which sent them; they may do whatever may be required by circumstances to safeguard and protect the rights and interests of these citizens, observing, however, the provisions both of the territorial law and of the consular convention." And in *Corpus Juris Secundum* (3 C. J. S., Ambassadors and Consuls, § 15, subd. b), we find this language: " Under international law consuls are clothed with authority to protect the rights and property interests of their nationals, although in the absence of specific authorization they are not recognized as the latter's personal agents. It has been broadly stated that a foreign consular officer needs no special authorization to repre-

sent his fellow countrymen in the courts, and it is clear that under treaty he is often authorized to do so.'' (To the same effect: 16 Am. Jur., Diplomatic ·and Consular Officers, § 13; 15 R. C. L., International Law, § 81, Butler on New York Surrogate Law and Practice, § 1751; 1 Hyde on International Law, § 469.)

In *Hamilton* v. *Erie R. R. Co.* (219 N. Y. 343, appeal dismissed with opinion 248 U. S. 369), cited by plaintiff, the Russian Consul General settled a claim in an action brought for wrongful death, and accruing to beneficiaries who were nationals of his government, without authority from them, and while the court held this to be unauthorized, it recognized the right of Consuls '' to interpose claims for the restitution of property '' belonging to their nationals, in this language, at page 351: '' The rights of consuls and consular officials rest on international law as well as on treaty stipulations. International law regards them as mercantile agents of the government appointing them, authorized to protect the commercial interests of its citizens or subjects in the country to which they are accredited and clothed only with authority for commercial purposes; to conserve and guard the property within their territorial jurisdiction of their countrymen dying therein is important among their rights and duties. (*The Anne*, 3 Wheat. 435; *Seidel* v. *Peschkaw*, 27 N. J. L. 427; *Matter of D'Adamo*, 212 N. Y. 214.) *While it vests them with the right to interpose claims for the restitution of property belonging to the subjects of their own country*, I have found no rule of international law or judicial decision indicating that it authorizes or permits them to dispose of, control or convert into another form the uninvaded and secure property of their living countrymen. The decision and opinion in *The Bello Corrunes* (6 Wheat. 152, 168) upholds the contrary conclusion.'' (Italics supplied.) But in the instant case, the Consul is not seeking '' to dispose of, control or convert into another form the uninvaded and secure property '' of the defendant bank, but merely to protect and preserve its property, which has been invaded by plaintiff's warrant of attachment and is about to be made insecure by enforcement of plaintiff's judgment.

In *Matter of Zalewski* (177 Misc. 384, affd. 265 App. Div. 878, leave to appeal to Court of Appeals granted Nov. 15, 1943, 291 N. Y. 831), also cited by plaintiff, the Polish Consul General filed a notice of election on behalf of the surviving spouse to take in contravention of the will of the decedent. While the court held this as unauthorized inasmuch as such a right of choice is strictly '' personal '', it reasserted the general rule, as

follows, at page 386: " It is a familiar principle of law that foreign consular representatives are deemed international attorneys in fact for their nationals (*The Bello Corrunes,* 6 Wheat. 152, 158; Butler N. Y. Surrogate Law & Practice, § 1751), but whereas *it has been held that irrespective of the terms of any specific treaty, and solely by virtue of their offices, they possess authority to guard the property of their respective nationals* (*Rocca* v. *Thompson,* 223 U. S. 317, 331; *Matter of D'Adamo,* 212 N. Y. 214, 223), they, like the usual variety of attorneys in fact, must be able to point to some express authorization to warrant their exercise of *more extensive powers.* Such additional authority, if conferred, must be found in the treaties between their governments and that of the United States." (Italics supplied.) (See, also, *Von Thodorovich* v. *Franz Josef Beneficial Assn.,* 154 F. 911; *Hunko* v. *Buffalo Crushed Stone Co.,* 203 App. Div. 284; *Vujic* v. *Youngstown Sheet & Tube Co.,* 220 F. 390; *All Union Chartering Co.* [*Sovfracht*] v. *The Kotkas,* 37 F. Supp. 835; *Ljubich* v. *Western Cooperage Co.,* 93 Oregon 633; *Matter of Herrmann,* 159 Minn. 274.)

It would seem from the foregoing that a consul is authorized to take appropriate measures as here sought for the protection of the property interests of his national under the unusual circumstances presented. In doing so, he acts in his official capacity, and not as defendant's personal agent or as one of the persons authorized to receive process under section 229 of the Civil Practice Act. He does, however, represent his national for the purpose of guarding and preserving its property, and securing for it an opportunity to assert and maintain its rights by way of defense to plaintiff's claim and, in that respect, he is, in my opinion, a representative of the defendant under section 217 of the Civil Practice Act. This appears to be the distinction indicated in the memorandum opinions of our Appellate Division in the three appeals aforementioned, wherein the Consul's right to protect his national is clearly recognized, though jurisdiction of the defendant bank could not be obtained in the first instance by service of process on the Consul.

Plaintiff's counsel concedes " the right of the consul to represent *ex officio* the ships of its country and its seamen ", as well as his " right to intervene in courts for the protection of the estates of the deceased nationals of consul's country "; but denies that this right to represent or intervene extends to any other situation. He cites no authority in support of this distinction and I have been unable to find any. *Von Thodorovich* v. *Franz Josef Beneficial Assn.* (*supra*) and other authorities above cited, indicate the contrary.

Moreover, the record before me also discloses that among the provisions of the existing treaty between the United States of America and the Republic of Estonia are the following:

" The nationals of each High Contracting Party shall enjoy freedom of access to the courts of justice of the other on conforming to the local laws, as well for the prosecution as for the defense of their rights, and in all degrees of jurisdiction established by law.

" The nationals of each High Contracting Party shall receive within the territories of the other, upon submitting to conditions imposed upon its nationals, the most constant protection and security for their persons and property, and shall enjoy in this respect that degree of protection that is required by international law. Their property shall not be taken without due process of law and without payment of just compensation." (Art. I.)

" Consular officers, nationals of the State by which they are appointed, may, within their respective consular districts, address the authorities, National, State, Provincial or Municipal, for the purpose of protecting their countrymen in the enjoyment of their rights accruing by treaty or otherwise. Complaint may be made for the infraction of those rights." (Art. XX.)

The Consul General claims in effect that under this treaty he has the right to address, as one of the " authorities ", this " State " court " for the purpose of protecting " one of his nationals " in the enjoyment of [its] rights accruing by treaty or otherwise ", and that one of these rights is to " enjoy freedom of access to the courts of justice ". With this contention, I am also in accord. (*Von Thodorovich* v. *Franz Josef Beneficial Assn.*, supra, at page 913.)

A fair interpretation of the authorities and the treaty provisions aforesaid, as well as a realistic view of world conditions now prevailing, compels the granting of this application, and this conclusion at the same time attains the ends of simple justice. Jurisdiction plaintiff already has; the right to adduce his proper proofs will be afforded him, but not to the exclusion of defendant's day in court, aided by the only representative available.

Submit order.