RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0158p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ST. CLAIR MARINE SALVAGE, INC.,

*Plaintiff-Appellant,*

*v.*

No. 14-2135

MICHAEL BULGARELLI; 2004 36 FOOT SEA RAY, MC
NO. 2220 TM,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:13-cv-10316—Michael Hluchaniuk, Magistrate Judge.

Decided and Filed:  July 22, 2015

Before:  COLE, Chief Judge; MERRITT and BATCHELDER, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:**  Brandon J. Wilson, HOWARD & HOWARD ATTORNEYS PLLC, Royal Oak, Michigan, for Appellant.  Dennis M. Rauss, GIARMARCO, MULLINS & HORTON, P.C., Troy Michigan, for Appellees.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Circuit Judge.  Defendant Michael Bulgarelli owns a boat that ran aground in Lake St. Clair, necessitating the services of a salvage ship to tug it free by towing it several feet.  Plaintiff St. Clair Marine Salvage, Inc., alleges that the agreed-upon price was approximately $9,000, while Bulgarelli insists he was quoted a price range of $1,000–$1,200.  The district court denied St. Clair Marine's motion for summary

1

judgment in this maritime case, citing the obvious dispute on a question of material fact. Following a bench trial in admiralty, the magistrate judge entered judgment in favor of Bulgarelli, finding that St. Clair Marine had engaged in fraud when the captain of its salvage vessel induced Bulgarelli to sign the salvage contract at issue.  We AFFIRM.

**I.**

On August 18, 2012, Michael Bulgarelli's 36-foot Sea Ray boat ran aground on Michigan's Lake St. Clair.  Groundings fall into two categories: "soft" groundings where the boat can be freed by a tug from a tow boat, and "hard" groundings where the vessel's weight is bearing upon the bottom of the vessel, endangering the craft and those aboard.  Bulgarelli contacted Tow Boat US, which dispatched a salvage vessel from St. Clair Marine commanded by Captain William Leslie to assist Bulgarelli.  Leslie claims that when he arrived, he conferred with Bulgarelli, and quoted Bulgarelli the price of $250 per foot of the Sea Ray's 36-foot length. Bulgarelli, however, insists that the quoted price was $1,000–$1,200, and that Leslie assured him that insurance would pay the bill.  Bulgarelli signed the contract, which did not include a printed price, but has "$250.00 FT" (i.e., "per foot") scrawled in its bottom margin.  Bulgarelli claims that handwriting was not present on the paper when he signed it, and since St. Clair did not use copies at the time, Leslie had exclusive possession and personal control of the sole copy of the contract once he and his vessel departed the area upon completing the operation.  Calling this a "hard" grounding in high winds and very rough waters, Leslie claims that he used his vessel to "churn up" the waterbed in front of Bulgarelli's vessel to "dig out" the Sea Ray, "tucked" his boat under the Sea Ray's bow, and pulled it into the channel, in a process that took 29 minutes. Bulgarelli and a corroborating witness provided a very different account, saying that the wind and water were both calm, and that Leslie merely secured a tow line, tugged the Sea Ray first from one angle, then from a second, and pulled the vessel free in a process that took less than ten minutes.  In either event, once the Sea Ray was free, Leslie departed that area of the lake, and promptly drafted a narrative report of the incident, in which he claimed, *inter alia*, that he knew from the initial phone call that this would be a "hard" grounding, and provided details of his account.

St. Clair Marine filed a three-count complaint in U.S. District Court for the Eastern District of Michigan, invoking the district court's admiralty jurisdiction under 28 U.S.C. § 1333, seeking enforcement of a maritime lien, alleging breach of a maritime salvage contract, and claiming quantum meruit/unjust enrichment. Bulgarelli counterclaimed for fraud, innocent misrepresentation, and reformation. Bulgarelli also filed an affidavit accusing Leslie of physically altering the contract at some point after Bulgarelli signed it, adding the handwritten notation "$250.00 FT." The district court denied St. Clair Marine's motion for summary judgment, given the factual dispute about the agreed-upon price and the allegation that one party had deceived the other in forming the contract.

The parties consented to have the case tried by a magistrate judge, who conducted a bench trial and found Bulgarelli and his corroborating witness credible and persuasive, while finding Leslie not credible. The court also found that Leslie could not have known from the brief initial phone call that this was a "hard" grounding, and inferred from the tone and structure of Leslie's written account that it was intended to persuade its reader rather than objectively convey the facts of the situation, and thus was designed to deceive Bulgarelli's insurance provider as to the nature of the salvage job. The court further found that Leslie was not credible when, on cross-examination, he professed not to recall the salient facts regarding previous lawsuits involving unpaid towing/salvage fees for towing jobs which he had performed. Consequently, the court made a finding of fact that Leslie had quoted the price of $1,000–$1,200 to Bulgarelli while assuring him that his insurance would cover the entire cost, intending all along to bill Bulgarelli's insurance company for $9,000. The court further found that Leslie had added the handwritten margin note of $250 per foot to the sole copy of the contract after Bulgarelli had signed it, and thus that it was not part of the agreement to which Bulgarelli assented. The court accordingly found that Leslie had engaged in fraud in the procurement of the towing contract, and voided the contract.

## II.

We begin, as the district court did, by confirming our jurisdiction. Because the requisite elements of diversity jurisdiction under 28 U.S.C. § 1332 are not present here, in order for us to have appellate jurisdiction under 28 U.S.C. § 1291, the district court must have had admiralty

jurisdiction under 28 U.S.C. § 1333. In the absence of admiralty jurisdiction, we would dismiss this matter, leaving the parties the option of pursuing it in Michigan's courts.

The Supreme Court long ago held that for disputes arising from contracts for salvage carried out between vessels upon the water, "there can be no doubt of the jurisdiction of a Court of Admiralty. . . [it] is the only Court where such a question can be tried." *Houseman v. Cargo of The Schooner North Carolina*, 40 U.S. (15 Pet.) 40, 48 (1841). Much more recently, the Court noted that "The Rules of Construction Act defines a 'vessel' as including 'every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water.'" *Lozman v. City of Riviera Beach*, 133 S. Ct. 735, 739 (2013) (quoting 1 U.S.C. § 3). No one disputes that Bulgarelli's boat and Leslie's salvage boat are both vessels that are "capable of being used" for water transportation, or that this lawsuit arises from a dispute over the contract price charged for salvage services. Although *Houseman* is almost two centuries old, as a Supreme Court precedent that is directly on point and has never been overruled, it fully controls our analysis here. *Agostini v. Felton*, 521 U.S. 203, 237 (1997).[1] The district court therefore had jurisdiction to hear this case, and we have appellate jurisdiction to review the district court's judgments.

## III.

St. Clair Marine appeals the district court's denial of its motion for summary judgment, arguing in essence that the material facts surrounding the salvage contract were not genuinely in dispute, and that St. Clair Marine was entitled to summary judgment on both its claim for breach of that contract and on Bulgarelli's counterclaim for fraud. Although neither party addresses the threshold question of whether the order denying summary judgment is appealable following a full trial on the merits, we must.

---

[1]We note that the Supreme Court's recent restatement of the test for determining admiralty jurisdiction, *see Norfolk S. Ry. v. James N. Kirby, Pty. Ltd.*, 543 U.S. 14, 24, 27–28 (2004), as well as the Court's reasoning that the "fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce," *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 608 (1991) (internal quotation marks omitted), are consistent with its 1841 decision in *Houseman*.

Confronted with a circuit split on the issue, the Supreme Court, in *Ortiz v. Jordan*, 562 U.S. 180 (2011), said:

> May a party, as the Sixth Circuit believed, appeal an order denying summary judgment after a full trial on the merits?  Our answer is no. . .  Once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion.

*Id.* at 183–84.  Although *Ortiz* was a case in which summary judgment had been sought and denied on qualified immunity grounds, the Court's holding is not limited to such cases.  This circuit has interpreted *Ortiz* as "leav[ing] open the possibility that [in] cases 'involv[ing] . . . [only] disputes about the substance and clarity of pre-existing law'" the denial of summary judgment may still be considered on appeal following a full trial on the merits.  *See Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 545 (6th Cir. 2012).

Here, the district court denied summary judgment because it concluded that material facts regarding the contract remained in dispute, and hence, this is not a case involving only legal issues.  But even if the district court's order denying summary judgment in this case is appealable, the appeal is meritless.  St. Clair Marine argues that the contract Bulgarelli signed contained a merger clause specifying that the written contract represents the entirety of the agreement between the parties, and thus federal courts may not look beyond the written instrument to decide this case.  Because the document contained the notation "$250.00 FT" along its bottom margin, St. Clair Marine argues, it was entitled to summary judgment in its favor.  Citing the rule against using verbal statements as parol evidence to defeat the plain language of a written contract, St. Clair Marine contends that Bulgarelli's claim that St. Clair Marine quoted him a significantly lower price may not be considered by the court.  That rule generally prohibits the use of verbal evidence in contract interpretation when that extrinsic oral evidence contradicts the clear and unambiguous written terms found within the four corners of the contractual instrument.  *See Rufflin v. Mercury Record Prods., Inc.*, 513 F.2d 222, 223–24 (6th Cir. 1975).

"When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation."  *Norfolk S. Ry. v. James N. Kirby, Pty. Ltd.*, 543 U.S. 14, 22–23 (2004).  Both parties argue that this case is controlled by Michigan law; both parties argue

that Michigan law militates in their respective favor.  Both parties are wrong.  Federal law controls in this case.

The general rule in contract law is:

When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

6 Peter Linzer, *Corbin on Contracts* § 25.2 (Joseph M. Perillo ed., 2010).

First, we have permitted the use of extrinsic parol evidence in maritime cases in appropriate circumstances.  *See Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 422 (6th Cir. 2008).  And second, we hold that the rule limiting court review to the four corners of the contractual document does not apply in a case such as this, where one party alleges that something within those four corners was surreptitiously added by the other party after the fact, with the deceptive purpose of altering the agreement, and the first party would have had no way of knowing about the alteration.  In such a situation, one party has *not* assented to the entire agreement.  Contractual duties are discharged for such alterations.  *Restatement (Second) of Contracts* § 286 (1981).

The printed contract contains no mention of price at all.  Leslie claims they agreed in writing to a price of $9,000; Bulgarelli says the agreement as to price was a verbal agreement of $1,200 or less.  Bulgarelli's affidavit alleging that Leslie altered the agreement by writing in the margin that the rate would be $250 per foot of the Sea Ray's length is more than a scintilla of evidence in opposition to St. Clair Marine's motion, and is enough to create a genuine issue of material fact.[2]  The district court correctly denied St. Clair Marine's motion for summary judgment.

---

[2]A mere scintilla of evidence by the nonmoving party is insufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**IV.**

**A.**

We turn now to the district court's final judgment.  Following a bench trial, we review de novo the district court's conclusions of law, and its findings of fact for clear error.  *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015).

Federal law governs here as well.  When Congress has not enacted law on a particular admiralty question, "in the absence of some controlling statute, the general maritime law, as accepted by the Federal courts, constitutes part of our national law." *S. Pac. R.R. Co. v. Jensen*, 244 U.S. 205, 215 (1917), *superseded in part on other grounds by statute*, Longshoremen's and Harbor Workers' Compensation Act, codified at 33 U.S.C. § 901 *et seq.*  Since there is no federal statute governing this case, we recur to federal common law, and are empowered to make decisional law for the interpretation of maritime contracts in admiralty cases.  *Kirby*, 543 U.S. at 23.  For admiralty cases alleging breach of contract, "we look both to the federal maritime law of contracts as well as to general principles of contract interpretation." *Royal Ins. Co.*, 525 F.3d at 421.

"Admiralty courts have traditionally been vigilant in protecting mariners from unscrupulous and dishonest salvors." *Jackson Marine Corp. v. Blue Fox*, 845 F.2d 1307, 1309 (5th Cir. 1988); *see also, e.g.*, *The Elfrida*, 172 U.S. 186, 194 (1891); *The Bello Corrunes*, 19 U.S. (6 Wheat.) 152, 173 (1821); *The Albany*, 44 F. 431, 434 (E.D. Mich. 1890).  Given the "heightened vulnerability" of a vessel's master when his ship and crew are in distress, the law takes a dim view of salvors who engage in "dishonesty, corruption, fraud, [or] falsehood" during towing or salvage operations.  *Jackson*, 845 F.2d at 1310 (quoting *Church v. Seventeen Hundred and Twelve Dollars*, 5 F. Cas. 669 (S.D. Fla. 1853) (No. 2713)) (internal quotation marks omitted).  A court sitting in admiralty will not enforce a contract "where the salvor has [] taken advantage of his power to make an unreasonable bargain." *Post v. Jones*, 60 U.S. (19 How.) 150, 160 (1857).  So even if the agreed upon price were $9,000, the salvage contract might be void if the non-salvor was in a state of distress at the time he signed the contract, especially in a situation where the non-salvor is an unsophisticated novice as the pilot of a vessel.  Admiralty courts are empowered to void contracts that were entered into under such circumstances, or—as

is the case here—where the master of the distressed vessel "has been corruptly or recklessly induced to sign." *The Elfrida*, 172 U.S. at 194.  Salvage contracts can be set aside when they are, *inter alia*, "corruptly entered into, or made under fraudulent representations, [or] a clear mistake or suppression of important facts." *Id.* at 192.

**B.**

We have not had occasion to articulate a rule that would control cases in admiralty in which the non-salvor party claims that the salvage contract was procured by fraud.  The Fifth Circuit has held that for maritime contracts:

> To prevail on a claim that a contract was fraudulently procured, the party that was deceived must show that (1) the deceiving party made a material misrepresentation or nondisclosure, (2) the representation was false or the nondisclosure implied that the facts were different from what the deceived party understood them to be, (3) the deceiving party knew that the representation was false or that the nondisclosure implied the existence of false facts, (4) the deceiving party intended the deceived party to rely on the misrepresentation or nondisclosure, and (5) the deceived party detrimentally relied upon the misrepresentation or nondisclosure.

*Black Gold Marine, Inc. v. Jackson Marine Co.*, 759 F.2d 466, 470 (5th Cir. 1985).  The district court here applied the *Black Gold Marine* rule, and we agree that it is properly applied to cases such as this one.

The district court was not clearly erroneous in its factual findings.  The court found Bulgarelli and corroborating witness credible and persuasive, while finding Leslie not credible, and also found that Leslie's written account was designed to deceive.  These findings led the district court to find that the agreed-upon price was $1,000–$1,200, that Leslie verbally conveyed that price to Bulgarelli, and that the contradictory written notation was fraudulently added after the fact as an alteration to the document that Bulgarelli had signed.  St. Clair Marine points to nothing in the record that demonstrates that those findings are clearly erroneous.

Applying the *Black Gold Marine* rule to these facts, we conclude that all of its factors are satisfied: Leslie made a material misrepresentation; it was false; Leslie knew it was false; Leslie intended for Bulgarelli to rely upon it; and Bulgarelli did so to his financial detriment.  The district court did not err in holding that the contract is void.

## C.

It is a general principle of maritime law "that the master of a vessel is the agent and representative of the owner and as such can bind the owner by acts performed within the scope of the agency," including torts and contract issues. *Jackson*, 845 F.2d at 1309–10. Here, Leslie's actions were entirely within the scope of his employment duties as he was acting as an agent of St. Clair Marine. Accordingly, the captain's improper actions are imputed to his employer. Because this contract was procured by fraud, St. Clair Marine cannot enforce the salvage contract against Bulgarelli.

## V.

For the foregoing reasons, we AFFIRM the judgment of the district court.