Maximilian Moss, S.
Persons who are nationals of Poland and reside there have been named beneficiaries of certain bequests in various wills of American citizens residing here. Applications have been made to this court for the transfer of such bequests to the Polish nationals residing in Poland.
Under the provisions of section 269-a of the Surrogate’s Court Act, where it appears to the court that one entitled to *279 a legacy would not have the benefit, use or control of the money or other property left him, the court may decree that such money or property be deposited with the City Treasurer to the credit of such legatee or beneficiary, where it remains as an interest bearing account, subject to the further order of the court.
It has been the general practice of this court not to permit the transfer of bequests to persons residing in countries behind the “iron curtain ” in the belief that such persons would not have the full benefit, use, control and enjoyment of the funds, by reason of excessive taxation, unfavorable currency restrictions, or other governmental controls which would in effect deny the foreign beneficiary the right to convert the funds at full value, without limitation or reservation.
As a result of representations made to this court by the Consul General at Washington of the Polish People’s Republic, that the situation in Poland was different from that generally believed, this court in an effort to do full justice to the many individuals residing in Poland who have been left bequests by relatives and friends here, on its own initiative and at its own expense visited Poland for an on the spot investigation of the situation. In connection therewith, the Surrogate conferred with the Ambassador of the United States to Poland at Warsaw, the Secretary to the Embassy and the American Consul, with members of the Association des Juris tes Polonais, members of the Bar Association of Warsaw, the Director-General of the Ministry of Finance, members of the staff of the Ministry of Finance and their Counsel, chiefs of divisions of the Ministry of Foreign Affairs, Chairman, officers and members of the Board of Directors of Bank Polska Kasa Opieki and their General Counsel, and others.. The Surrogate also spent considerable time at the principal office of Bank Polska Kasa Opieki during the banking hours.
Prior to his visit to Poland, the Surrogate had been informed that Poland had an inheritance tax law which severely taxed funds coining into Poland from foreign sources. The Surrogate found that it was true that an inheritance tax law existed but that what was generally overlooked was subdivision 6 thereof which “ exempted ” from taxation inheritances from foreign lands. Upon demand of written proof, the court was supplied with Law Register or Journal No. 9 of February 19, 1951 which contained a decree of February 3, 1947 “ Concerning Tax on the Acquisition of Property Rights ”. Article 4 óf the decree contains nine subdivisions of property rights which are not subject to taxation. The subdivision affecting *280 the exemption from tax of inheritances is subdivision “6”, contained on page 84 of the said Law Register or Journal. A translation of the law furnished the court by the American Embassy is as follows: Decree of February 3, 1947, Title I, Article 4.
‘ ‘ Exempt from taxation is the unobligation acquisition of: * * * “6) Foreign currencies or foreign drafts located abroad and subsequently transferred to Poland, including foreign means of payment constituting the process of the sale of property acquired without obligation.”
It was further explained as follows: “ If one buys property abroad and then sells it, or buys foreign currency abroad and then attempts to import it, the tax is applied; but if one acquires the property or currency without incurring any obligation, e.g. as a gift or inheritance, then it is tax-exempt.”
Substantially similar interpretations were received from Polish scholars and persons of Polish ancestry residing in the United States.
Although the court was notified from the foregoing that foreign inheritances were tax-exempt, still it was possible that currency or foreign exchange regulations might conceivably take such a large bite out of the inheritances when the funds were received in Poland, that the tax exemption would prove of little value. The court therefore had to determine whether Polish nationals receiving estate funds from the United States could convert such funds at full value in Poland, without deductions.
With respect to the latter, the court found that special facilities for remittances from the United States were available through the Bank Polska ICasa Opieki, popularly known as the PKO bank. Using these facilities, Polish nationals residing in Poland receiving inheritances, gifts, support payments, etc., may receive dollars from bank PKO through the medium of purchasing merchandise from the bank. Prices of the goods sold by the bank are calculated on the basis of retail prices prevailing in the United States. This merchandise may be used by the individual or may be legally sold at least once to a third party. If the goods are not wanted, a certificate for the goods or of its value is given by the bank and the bank has advised this court that if requested, it could arrange its immediate negotiation in which event the bank would credit the holder of the certificate with Polish zlotys calculated on a preferential basis. The ratio between the United States dollar value of an order and the amount of zlotys received by the recipient, when he sells or negotiates the transfer of the merchandise, depends on the current retail market price of the merchandise prevailing in *281 the United States. This usually results in a preferential return of about 72 zlotys for the dollar. Thus a return would be realized in Polish currency which considerably exceeds the sum which would have been obtained at official exchange rates through the use of ordinary dollar remittance channels. The normal basic rate of exchange is 4 zlotys per U. S. dollar and the special rate of exchange applicable to certain situations is 24 zlotys per U. S. dollar.
The operation of this system may be understood better by the following supposititious ease of a Polish national entitled to a bequest of $3,500. He would seek to purchase through PKO any kind of merchandise which in the end would net him the full use of the bequest of $3,500 converted at its full American value into Polish funds. He might select coal, or typewriters or radio sets or anything else on sale by PKO. Assume that he selects radio sets as his medium for converting American dollars into Polish zlotys. If an “X” brand radio set sells in Poland for $105, but retails in one of New York’s department stores for $35, then the recipient in Poland of an inheritance of $3,500 can go to the bank PKO and negotiate the purchase of 100 such radio sets at a ratio between dollar and zloty which will allow him to buy them at the New York price of $35. For example, 100 radio sets at the Polish price of $105 would cost $10,500. At the special official exchange rate of 24 zlotys per dollar, the 100 radio sets at the Polish selling price and the official exchange rate would require 252,000 zlotys ($10,500 multiplied by 24 zlotys per dollar equals 252,000). Inasmuch, however, as the recipient’s $3,500 legacy at the special official exchange rate of 24 zlotys per dollar would yield only 84,000 zlotys ($3,500 multiplied by 24 zlotys per dollar equals 84,000), he would not be in a position to buy the 100 radio sets at the New York price. Therefore, to give the resident Polish national receiving the foreign funds the same privilege that he would have enjoyed had he bought the sets in New York at $35 per set, the rate of exchange of his $3,500 legacy is adjusted so that he would be able to receive the necessary 252,000 zlotys. To do this, the value of his dollar is set at 72 zlotys. Seventy-two zlotys per dollar multiplied by his inheritance of $3,500 gives him 252,000 zlotys, thus enabling him to purchase the merchandise at the same price that it could have been bought in New York.
The foregoing circumlocution is officially gone through in order to encourage the transmittal to Poland of badly needed dollars, the theory being that if a Polish national entitled to a legacy from the United States can buy in Poland merchandise at the *282 same price as in the United States, then obviously the purchase will be made in Poland, and thereby dollars will be sent into Poland instead of being used up abroad.
In order to encourage the use of bank PKO by those receiving dollars from abroad, and also to bring into use American dollars which may be in hiding* by Polish residents, extensive advertising is had and catalogues are issued attractively displaying foreign wares of almost every nature. An examination of the catalogue will show nearly all types of foreign merchandise, such as automobiles, motorcycles, champagne, whiskey, Napoleon brandy, canned foods and drinks, lingerie, safety razors, tobacco, cigarettes, cigarette lighters, coats and suits, luggage, fountain pens, clocks, cameras, television and radio sets, sewing machines, refrigerators, typewriters, furniture, rugs, carpets, motors, machinery, microscopes, etc. In addition, the bank will make provision for the construction of homes or the purchase of homes.
On all the proof, the court is of the opinion that Polish nationals residing* in Poland who receive estate funds from the United States, now will have the full use, benefit, control and enjoyment of such funds without limitation or reservation, without deduction for inheritance or other taxes, without unfavorable currency restrictions, and without restriction as to the use which the Polish nationals may wish to make of their bequests. They will also have the right to convert the bequest upon receipt thereof in Poland into Polish funds at their full American value.
This decision and any order or decree made hereunder will be applicable only during such times as the conditions outlined herein shall substantially remain in force and effect in Poland. To this end, the order or decree applicable to each separate estate proceeding will contain appropriate safeguards and conditions to assure the continuance of the present status affecting-foreign inheritances. In addition, the order or decree shall provide for the filing with the court of duly authenticated receipts from the persons in Poland entitled to the funds. All funds shall be paid to the attorney in fact, where one has been designated, to be transmitted by the latter after deduction of proper charges, to the bank Polska Kasa Opield, for the benefit of the particular legatee, beneficiary or distributee, subject to withdrawal by the person for whose benefit the funds are deposited in accordance with the PKO plan afore-mentioned.
An order or decree will be settled on notice in the first above-entitled case as well as in any and all other applicable cases.