Maria Blaskiewicz et al. *v.* Joseph F. Ryter et al.

Superior Court      Hartford County      File No. 134215

Stanislaw Podwika et al. *v.* Thomas J. O'Malley, Jr., et al.

Superior Court      Hartford County      File No. 135243

Anna Kilian et al. *v.* Joseph Moshinski et al.

Superior Court      Hartford County      File No. 135510

Memorandum filed January 10, 1964

*Richard T. Mokrzynski,* of New Haven, for the plaintiffs in each case.

*Joseph F. Ryter,* of Hartford, for defendant Ladislaus A. Karwacki in the first case.

*Hyman, Keith & Hyman,* of Hartford, for the named defendant in the third case.

*Harold M. Mulvey,* attorney general, and *Ralph G. Murphy,* assistant attorney general, for the state.

House, J. The following memorandum of decision is verbatim a copy of the memorandum of decision issued by this court *(Ryan, J.)* on January 18, 1963, in the cases of *Chodorowski* v. *Hisz,* Superior Court, Hartford County, No. 125247, and *Zimny* v. *Lach,* Superior Court, Hartford County, No. 127429. The only word changed in Judge Ryan's memorandum is the word "two." Whereas the present memorandum involves three cases, Judge Ryan's memorandum covered two cases; hence the word "two" in his memorandum reads "three" in this memoran-

dum. With this sole exception, the memorandum of Judge Ryan in the two cases is adopted as the memorandum in the present cases:

### "Memorandum of Decision

"These [three] cases were tried together and therefore, since the same facts are involved in each case, one memorandum of decision will cover the cases. Each case is an appeal by the heirs at law and distributees of the respective decedents who reside in Poland and are acting herein by their attorney in fact, Dr. Adam Bonarski, chief of the consular division of the Polish People's Republic in Washington, D.C. In each case, the Probate Court for the district of Hartford made a finding that the plaintiffs do not reside within the territorial limits of the United States of America or any territory or possession thereof, that they would not have the benefit or use or control of property due them, and that special circumstances make it desirable that delivery to them be deferred, and ordered that the shares payable to them from said estate be paid to the treasurer of the state of Connecticut, to be invested by him at his discretion and, together with any proceeds thereof, to be held subject to the further order of that court. The statute under which the Probate Court acted is General Statutes § 45-278, which provides as follows: 'When it appears that a legatee, distributee, cestui or beneficiary not residing within the territorial limits of the United States of America or any territory or possession thereof would not have the benefit or use or control of property due him and that special circumstances make it desirable that delivery to him be deferred, any court of probate may order that such property be converted into available funds and paid to the state treasurer, to be invested by him at his discretion, and, together with any proceeds thereof, to be held subject to such further order as

such court may enter, provided the reasonable fees, as allowed by such court, of the attorney for any such legatee, distributee, cestui or beneficiary whose funds are payable to the state treasurer hereunder shall be considered a lien thereon and shall be paid by the fiduciary having such funds in charge to such attorney prior to payment to the state treasurer.'

"In each of these cases the claim is that there was no evidence before the Probate Court on which it could base a finding that the distributees would not have the benefit or use or control of property due them and that special circumstances make it desirable that delivery to them be deferred, and that therefore there was no basis for the order of the Probate Court that the shares payable to these people be paid to the treasurer of the state of Connecticut. The further claim is made in each case that the reasonable fees of the attorney as provided by statute were not ordered to be paid by the administrator to such attorney prior to payment to the state treasurer.

"The case was very thoroughly presented and certain facts were made crystal clear to the court. It is legal for Polish citizens to physically possess American dollars. While most Polish distributees and heirs have seen fit to choose Dr. Adam Bonarski, chief of the consular service, as their attorney in fact, they have, nevertheless, the right to choose an attorney in fact of their own. The fee of the Polish consular service is 5 percent of the net amount sent to Poland if there is a court trial. The average cost is merely for the expense of the Polish consular service and amounts to $8 to $10 in most estates. The money is sent through the Girard Bank of Philadelphia and the Irving Trust Company of New York. There was testimony from American citizens of Polish extraction who not only

have sent packages and money to Poland over a period of years but who have actually made visits to Poland to check up on the situation. The distributees and heirs will have the full use, benefit and control of the funds which are sent to them. The official rate of exchange is 24 zlotys to the dollar, but by using the machinery of the bank PKO [Bank Polska Kasa Opieki in Warsaw] these recipients may receive 72 zlotys to the dollar. This is done by having the heirs and distributees purchase from the bank merchandise which they are then permitted to resell. By reselling these goods, a profit results which gives to the heirs and distributees 72 zlotys to the dollar instead of the official 24 to a dollar. The recipient has the alternative of converting the American dollars directly into Polish zlotys at the official rate of 24 zlotys per dollar through the Polish National Bank. While the process of converting American dollars into merchandise and then selling these goods at a profit to give to the recipient 72 zlotys to the dollar may seem quite complicated to an American, the fact remains that this process has been carried on for a considerable period of time and the court is satisfied that the distributees and heirs actually get the benefit of this. It also enables them through this medium of exchange to purchase coal, clothing and many articles contained in a catalog which is one of the exhibits in this case which they would otherwise be unable to obtain in Poland. One of the questions which arose was whether or not the Polish government would take a substantial portion of any funds received in taxation. The court finds that while there is an estate tax in Poland under the decree of February 3, 1947, the Polish estate tax does not apply to estates from abroad. These Polish citizens therefore receive the funds from the United States without tax by the Polish government.

"The conclusion of the Probate Court that the heirs and distributees in these [three] estates would not have the benefit or use or control of property due them and that special circumstances make it desirable that delivery to them be deferred and the funds paid to the state treasurer cannot be sustained. For excellent discussion on the subject, see *Matter of Tybus,* 28 Misc. 2d 278 (N.Y.), and *In re Zabinski Estate,* a Pennsylvania case reported in 53 Berks County Law Journal 107.

"In each case, judgment may enter sustaining the appeal and reversing the decree of the Probate Court. The cases are remanded to the Probate Court with instruction to proceed in accordance with this opinion."

Since this makes five cases within one calendar year in which the time of the Superior Court has been taken in a determination of this matter, in each of which the conclusion of the Superior Court has been that the conclusion of the Probate Court for the district of Hartford on this point cannot be sustained, it is suggested that the clerk forward by registered mail to the personal attention of the judge of the Probate Court for the district of Hartford a copy of this memorandum of decision.