Edward S. Silver, S.
Polish distributees herein move to reject the report of the Referee who recommended that their shares of the estate be deposited with the Director of Finance of the City of New York for their benefit under the provisions of section 269-a of the Surrogate’s Court Act. The Public *599 Administrator moves to confirm the report. The distributees contend: (1) that the Referee could not report as he did unless he found as a fact that the situation in Poland had changed since Matter of Tybus (28 Misc 2d 278) was decided in 1961; (2) that Matter of Tybus is stare decisis and that the burden of proving that there has been a change is upon those asserting that the funds should not be transmitted to Poland; (3) that they have produced the only witnesses and exhibits and that the Referee’s recommended finding that the distributees have not sustained the burden of proof imposed upon them by section 269-a is against the weight of evidence, and (4) that the report is based on political and not legal considerations. These contentions will bo considered in order.
I. The first contention is that the order of reference required the Referee to determine as a fact that conditions in Poland had changed since 1961 in order to reach the conclusion he did reach. The order directed the Referee to hear and report on “ the distributees’ ability to have the benefit, use and control of the money or other property due them ”. In Tybus the learned Surrogate found on the basis of the evidence then before him that at that time in 1961 the Tybus distributees would have the use, benefit and control of their funds. In the instant matter the Referee was required to report on the evidence produced before him in 1965 whether the ICina distributees would have the use, benefit and control of the funds due them. Each case rests upon its own facts and, upon the basis of the rapid changes in the world, it is unrealistic to assume that the facts in Poland in 1961 became static and are the same in 1965. It can be further stated that the Tybus record does not reveal facts concerning benefit or use or control by the Polish beneficiaries in that case.
II. The second contention of the distributees is the most unusual legal concept that an issue of a particular fact once decided becomes a legal principle. Stare decisis relates to legal principles only (21 C. J. S. Courts, § 188; see, also, People ex rel. Watchtower Bible Soc. v. Haring, 286 App. Div. 676, 680). The facts found in Tybus did not become a principle of law. (See 15 Buffalo L. Rev., No. 1, p. 110.) There was no issue of law in Tybus and there is none in Kina; the law in both cases is stated in section 269-a of the Surrogate’s Court Act, and there is no dispute about this.
III. The third contention of the distributees is that they are the only ones who have produced witnesses and introduced exhibits; they submit that, such evidence being unchallenged, the recommendation of the Referee is against the weight of evidence.
Two witnesses testified. The first witness was the vice-pres *600 ident of the Pekao Trading Corporation of New York which engages in the business of transmitting funds and orders for consumer goods to Poland. He testified that his organization does not send estate funds to Poland except when acting for an executor. A customer who wanted to send $50 to Poland would be initially charged $2 “manipulation” fee, then 14% of the $50, or $7, would be deducted in the United States, and the balance of $43 plus one half of the “manipulation” charge would be remitted to Poland. It is thus evident that the minimum charge in this country would be 14% plus the “ manipulation ” charge. If, as here, over $40,000 were to be sent, the minimum deducted would be $5,600 by the American Pekao which is wholly owned by the Polish PKO, which in turn is owned by the Polish government. Nonetheless, the witness insisted PKO “ doesn’t charge the customer no charges.”
This witness further testified that the American donor had the theoretical option to direct his money to be paid in zlotys but, as he testified, as a practical matter this does not occur. ‘ ‘ If the person sends now $100 to Poland and says that the recipient should receive $100, equivalent to $100 in zlotys, that means $100 multiplied by 72. Some kind of transaction is taking place in Poland and they are receiving money and send to the recipient. It is not on the basis that Bank Pekao makes the money and sends it to the recipient, no. The Bank Pekao at the same time in which will send the recipient 7200 zlotys, places on the market the merchandise of 7200 zlotys and as a matter of fact, even not the Pekao is sending this money, but this money is sending the organization which is buying the merchandise.” Inasmuch as the method of transmission of funds testified to concerned moneys transmitted other than estate funds, and we are here dealing with estate funds, the testimony of this witness is irrelevant. Struggle as one might, to be most charitable the evidence of this witness is most confusing. A similar confusion appears from the testimony of the second witness.
The testimony of the second of the two witnesses for the distributees was not much clearer than the first witness. The Consular Attache of the Polish Embassy in Washington in charge of estate matters in 24 of the United States, testified that, although Polish law compelled the sending of estate funds to PKO in Poland, he had no knowledge of the existence of the regulations of PKO. Services are rendered by the consular division. For example: If someone dies in Poland subsequent to the death of the person who died in the United States the consular division negotiates proceedings in the Polish courts which makes a determination of the kind which the consular *601 service is ‘ ‘ requested by the American attorney to return ’ From the estate funds received the consular service pays the attorneys’ fees, in amounts agreed to by the consular service and the attorneys, deducts disbursements- — at the official rate of 24 zlotys to the dollar — and also deducts 5% of the sum received for its services. The net proceeds are deposited in an American bank and information thereof is sent to Poland. PKO notifies the distributees of their rights to purchase merchandise.
In 1961 a person interested in the estate could “ personally go to the Bank Pekao and purchase the merchandise in Bank Pekao or to receive some drafts from Bank Pekao, I mean coupons, it is usually called coupons, and to sell these coupons to the said enterprise or shops interested to receive foreign made goods.” He testified that was the procedure in 1961. At the time of the hearing he testified the distributees can use the coupons in the Pekao Bank. (At this time one may infer that the PKO Bank is not a banking organization as an American would understand a bank; from the evidence it would appear that the enterprise is similar to a department store where customers may maintain deposit accounts and which issue purchase orders, “ gift certificates ”, for purchases of merchandise.) A distributee cannot go to the PKO Bank and say: “ Give me 72 zlotys for the dollar ” or say “ Give me my dollars ” to deposit in another bank. The deposit account or the coupons may be used only in PKO. In PKO there are representatives of other State shops who are interested in obtaining foreign goods. A distributee who wishes to receive zlotys can ask these representatives to buy dollars “ and they will pay him 72 zlotys per one dollar.” A distributee cannot use his dollars to take a month’s vacation if he so wishes. He cannot buy butter in PKO for they do not have such goods. If he can obtain permission from a State -agency to use the credits for foreign travel he may do so but permission “ is the inside matter of our authorities which has control over * * * we have no free circulation in Poland of foreign money.” It is entirely discretionary with the agency granting authority. The “dollars” on “deposit” in the “ bank ” in Warsaw can be used only to pay for articles in this “supermarket” of “scarce commodities as well as foreign goods” or of “ scarce foreign origin goods” (Department of State Letter, No. 61-3557-6, infra), and if a distributee wants to use the “ dollars ’’for any other purpose he has to get permission of a government functionary.
The-Polish distributees rely on a letter of the Department of State of the United States of America to support their contentions. It is obvious from the Letter, No. 61-3557-6, that much *602 of what is said therein is a restatement of a note of the Polish Embassy. The State Department letter reads in part: “ The [Polish] Embassy states that Polish beneficiaries may elect either to receive estate funds in Polish currency at a rate of exchange reflecting an average purchasing power of the zloty corresponding substantially to that of the dollar in the United States” (emphasis supplied). This appears to be the basis upon which the Polish distributees predicate their assumption that they will receive full value for the dollars due them. There is in this record no evidence of the means by which this conversion of Polish goods and services into American prices is accomplished. A fair reading of the quoted part of the letter would indicate, for example, that a cow that would cost $150 in the United States and $50 in Poland would be turned over to the distributee for $150 of his United States dollars. Similarly, if a haircut costs 50 cents in Poland, and $1.50 in the United States, the distributee would receive one haircut in Poland for $1.50 of his United States dollars. And, of course, by the same interpretation, a Polish ham sold for $5 in New York would cost $5 of the distributee’s funds in Poland. As a consequence of this, in the absence of proof as to the rate paid the distributee in comparison with the rate of exchange in the world market, the letter submitted is of no value in the determination of the question submitted to the Referee.
Section 269-a of the Surrogate’s Court Act reads in part: “Where it shall appear that a legatee, distributee or beneficiary of a trust would not have the benefit or use or control of the money or other property due him ”, the court may decree deposit of the fund for his benefit. And where it is uncertain as it is here that the distributees ‘ ‘ would have the benefit or use or control ’ ’ the burden of proving such benefit or use or control is on them. It will be noticed that the Legislature stated these conditions in the alternative, the benefit or the use or the control. It may be assumed that the Legislature intended these terms to have the ordinary sense of those words as commonly used in this State. The Legislature did not limit any one of the three terms employed — it did not say “ partial benefit ”, “ use under certain conditions ”, or “ control to the extent permitted by the foreign government ’ ’. In short, the Legislature intended these concepts to reflect the normal benefit, use and control that is the common course of events in this State. And, aware of the restrictions upon the use of property incident to all modern governments, the Legislature intended that the court apply the rule of reasonable use, benefit and control in the hands of the distributees, and placed the burden of showing such *603 benefit, use and control on the distributees. On the basis of the evidence in this record (1) the Polish distributees did not establish they will have the reasonable benefit of their funds; (2) they did establish that the use of their funds is only such as is permitted them by the Polish government; (3) finally, they did establish that they will not have any control of those “ dollars ” whatsoever at any time beginning with the time the funds are turned over to Polish authorities in the United States. The failure of the Polish distributees to bear the burden imposed on them by subdivision 2 of section 269-a of the Surrogate’s Court Act compels confirmation of the Beferee’s recommendations.
IV. The distributees charge that the Beferee was not objective in his evaluation of the evidence before him. They point out that the Beferee has noted a number of restrictions and the fact that, since Poland is a Socialist-Communist society, there are certain things which cannot be done with money in Poland. They insist that the social and political character of the Polish government is neither relevant nor controlling. They further charge that the Beferee refused to give weight to their claim that Poland was removed from a list issued by the Treasury Department in 1957 “ upon a finding by the United States Govoimmont that Polish beneficiaries do receive the full value of the United States funds.”
The court disagrees that the economic conditions arising out of the social and political character of the government of Poland are not relevant. While not controlling, they are a part of the totality of facts tending to a rational conclusion that the distributees do or do not have the benefit, or use or control of their funds. It is indeed difficult to conceive of distributees receiving much value for their funds before the revision of the Polish laws in 1957 which brought about the change on the part of the United States Government. These restrictions were most certainly the result of the social and political conditions then existing and were relevant; the economic effect of the present social and political conditions are equally relevant inasmuch as the restrictive economic result of those conditions relates directly to the extent to which the distributees have the benefit or use or control of the funds due them. Thus, in assessing the degree of benefit, or of use or of control by the distributees, the economic consequences of Communist-oriented socialism and politics are pertinent to the issue to be resolved.
While the letter of the State Department noted above does state that the Federal agencies are satisfied that Polish beneficiaries receive instruments issued by the United States Gov- *604 eminent and are free to negotiate them at full value, this statement is itself based on assurances of the Polish officials that the most favorable prevailing rate of exchange is applicable to payments by agencies of the United States. There is neither in the letter nor in the evidence adduced at the trial any indication that estate funds remitted to Poland receive this preferential treatment. Nor does the letter say or intimate that the recipients t>l of United States Treasury checks in payment of Social Security, Veterans’ benefits or other benefits under Federal Legislation” (State Department letter, supra) receive the benefit, use and control of such funds. Nor indeed is the United States Government limited in sending such funds by the restrictions of section 269-a of the New York Surrogate’s Court Act as we are.
The mandate of the New York Legislature may not be satisfied with assurances; proof is required. In doing this we do not engage in a game of semantics; we deal with the realities shown by the record. It must be unequivocally emphasized that, in considering the facts in the record, we are not at all concerned with the political system under which distributees live. We are not in the least concerned in determining this matter whether the Polish People’s Republic is in fact the people’s, a republic or even Polish. We are concerned whether, under all the facts, the distributees have reasonable benefit, use and control of the funds due them in the sense that the New York Legislature intended.
The motion to reject the report of the Referee is denied and the motion to confirm the said report is granted.