**Daniel Gonzales DuPREE, Consul of Mexico, Applicant for Intervention, Antonio Garcia Orozco, et al., Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 75–1830.

United States Court of Appeals, Ninth Circuit.

Aug. 25, 1977.

Tom Eckhardt, San Diego, Cal., submitted brief for appellants.

Terry Knoepp, U. S. Atty., John R. Neece, Asst. U. S. Atty., San Diego, Cal., submitted brief for appellee.

Before CARTER and SNEED, Circuit Judges, and WOLLENBERG,* District Judge.

SNEED, Circuit Judge:

## I.

### FACTS.

This present appeal derives from a suit filed on January 31, 1973 brought by three Mexican nationals in which they alleged that they were alien material witnesses who were being held in prison and being paid only $1 per day for each day of their detention, including days spent in court. They claimed that they and the putative class of others similarly situated were entitled to $20 per day for each day of court attendance; they sought a mandatory injunction compelling the United States to pay that sum as provided in § 28 U.S.C. § 1821 and to reimburse plaintiffs' attorneys' fees.

After considerable legal maneuvering in which the plaintiffs sought to establish a default judgment and the defendants a dismissal of the action, on October 15, 1974, Daniel Gonzales DuPree, Consul of Mexico at San Diego,[1] filed notice of inter-

---

* Hon. Albert C. Wollenberg, United States District Judge for the Northern District of California, sitting by designation.

1. It has been brought to our attention that Consul Daniel Gonzales DuPree's recognition as a consular agent of Mexico was formally terminated on March 31, 1975, approximately three months prior to the time his brief on appeal was filed in this court. Department of Justice Memorandum, p. 6. We do not treat this as rendering the appeal moot.

vention under Rule 24(a), F.R.C.P. on behalf of the three named plaintiffs and all other Mexican nationals "similarly detained by the United States authorities in prison for want of security for their appearance" from January 1969. to October 1974.

The district court dismissed the complaint for want of prosecution and denied the Consul's motion for intervention on the grounds that the 1942 Consular Convention between the United States and Mexico gave consul only a general right to assist Mexican nationals and that he was not a member of the purported class.

Consul now appeals both the dismissal of the complaint and the denial of his motion to intervene, alleging that his intervention is sanctioned by the Mexican Consular Convention, the 1963 Vienna Convention on Consular Relations and general principles of international law.

The order of the district court is sustained. We hold that the Consul lacks standing to intervene in this suit. In taking this action we have been aided by a memorandum prepared by the Department of Justice after consultation with the Department of State.

## II.

### Requirements for Standing.

■ In order to invoke the power of a federal court created under Article III of the Constitution, a party must allege an actual "case or controversy." *O'Shea v. Littleton,* 414 U.S. 488, 493, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The heart of this requirement is that a plaintiff must allege actual or threatened injury to himself resulting from the putatively illegal action. *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *S. v. D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). When the suit takes the form of a class action, Article III requires that the representative or named plaintiff must share the same injury or threat of injury. *Warth v. Seldin, supra,* 422 U.S. at 502, 95 S.Ct. 2197; *O'Shea v. Littleton, supra,* 414 U.S. at 494, 94 S.Ct. 669. As was said in *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975), "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified . .".

■ In addition to the Article III barrier, there also are a number of well-established prudential barriers to standing. Thus, for example, the presence of harm to a party does not permit him to assert the rights of third parties in order to obtain redress for himself. *Warth v. Seldin, supra,* 422 U.S. at 509, 95 S.Ct. 2197.

■ On the other hand, statutes may serve to satisfy the constitutional requirements for, and overcome the various prudential limitations upon, standing. *Id.* at 509–10, 95 S.Ct. 2197. A statute may create in a party a right, the impairment of which would suffice to create a case or

Several analogies suggest themselves to support this conclusion. To hold that a change in consul renders the case moot would create a situation "capable of repetition," yet making review difficult, if not "defying review" as in *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); *Hall v. Beals,* 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969), and *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Since the position DuPree asserts is not personal but attaches to his office, nothing would be gained by requiring his successor to institute a new suit. This is not a case in which a change in parties renders the need for an injunction against alleged future harm uncertain, as in *Spomer v. Littleton,* 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974).

Analogy may also be had to suits to which "public officials" are parties, governed by Rule 25(d), F.R.C.P. and Rule 43(c), F.R.App.P. In the case of the death or separation from office of such an official, "the action does not abate and his successor is automatically substituted as a party." Rule 43(c), F.R.App.P.; *see Lucy v. Adams,* 224 F.Supp. 79 (N.D.Ala.1963). Of course, any party plaintiff of this type may choose to withdraw from a suit.

controversy. And if a party has himself suffered an injury, a statute may permit him to sue on behalf of third parties or assert a "public interest." *Id.; Sierra Club v. Morton*, 405 U.S. 727, 737–38, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Scripps-Howard Radio v. FCC*, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); *FCC v. Sanders Bros. Radio Station*, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940). Presumably treaties and international conventions being on the same footing as legislative enactments may serve the same function in affording standing. *See Whitney v. Robertson*, 124 U.S. 190, 8 S.Ct. 456, 31 L.Ed. 386 (1888). It is within this framework that we consider whether the Consul of Mexico may intervene in this case.

### III.

*Standing as Derived From International Law and Treaties.*

■ Without aid of statute, treaty or special exception provided by international law, the Consul does not have standing to serve as representative plaintiff for the alleged class. He is not one of the "witnesses . . . of Mexican nationality . . . detained by the United States authorities, in prison, for want of security for their appearance . . . " during the relevant period. He is not among the injured, and has no interest in or right to the monetary recovery sought. He is simply not a member of the class.

■ Nor do we believe that international law vests in the Consul either a right which was violated by the alleged actions of the United States or authority to assert the rights of others which might have been impaired by such actions. Although venerable authority recognizes the inherent right of properly authorized consuls to protect the property interests of nationals of the countries they represent, *The Bello Corrunes*, 6 Wheat. 152, 5 L.Ed. 229 (1821), it is a right that has been confined rather narrowly. In most instances it has been reinforced or supplanted by specific treaties or statutes. *E. g., Rocca v. Thompson*, 223 U.S. 317, 32 S.Ct. 207, 56 L.Ed. 453 (1912);

*Vujic v. Youngstown Sheet & Tube Co.*, 220 F. 390 (N.D.Ohio 1914); *Ljubich v. Western Cooperage Company*, 93 Or. 633, 184 P. 551 (1919). When not so buttressed it has been limited to the interposition of claims for the restitution of specific property and the representation of the interests of their nationals in estate matters. *E. g., The Anne*, 3 Wheat. 435, 4 L.Ed. 428 (1818); *In re Bedo's Estate*, 207 Misc. 35, 136 N.Y.S.2d 407 (Surr. Ct.1955). For a general discussion of representation by consuls in estate matters, *see* Lee, Consular Law and Practice, 135–153 (1961). Whether or not so buttressed the cases reflect marked restraint in recognizing the authority of consuls to act as personal representatives of foreign nationals having plenary authority. *See In re Tybus' Will*, 28 Misc.2d 278, 217 N.Y.S.2d 913 (Surr. Ct.1961); *In re Greenberg's Estate*, 46 Misc.2d 883, 261 N.Y.S.2d 176 (Surr.Ct. 1964), *aff'd, per curiam*, 24 A.D.2d 435, 260 N.Y.S.2d 818 (Sup.Ct.1965); *In re Herrman's Estate*, 159 Minn. 274, 198 N.W. 1001 (1924); *Hamilton v. Erie Railroad Co.*, 219 N.Y. 343, 114 N.E. 399 (1916). The conclusion is inescapable that the general principles of international law do not provide a means by which the Consul can overcome the obstacles to standing which he confronts in this proceeding.

■ We are also convinced that these obstacles are not removed by either the Mexican Consular Convention or the Vienna Consular Convention. The former in section 1 of Article VI vests consular officers with the right to "address" the authorities of the receiving state for the purpose of protecting their nationals. If the response to this "address" is unsatisfactory the consular officer can complain "through the diplomatic channel." Section 2(d) of Article VI permits consular officers to "assist" their nationals in proceedings before the authorities of the receiving state. To "assist" one is not to act in his stead. We are informed by the Department of Justice in its memorandum prepared after consultation with the Department of State that to construe "assist" otherwise would expand Article VI in a manner never contemplated

by the Contracting States; Department of Justice Memorandum, p. 8 and, of course, in the interpretation of treaties and conventions, the opinions of the Executive Branch are entitled to much weight. *Factor v. Laubenheimer*, 290 U.S. 276, 295, 54 S.Ct. 191, 78 L.Ed. 315 (1933); *see* L. Henkin, Foreign Affairs and the Constitution 167 n.128 (1972).

Neither does the Vienna Consular Convention support the Consul's standing. Article 5(1) of the convention subjects consuls to the "practices and procedures obtaining in the receiving state . . . [in] representing or arranging appropriate representation for nationals of the sending states before the tribunals . . . of the receiving State." Such practices and procedures include our principles of standing as well as the specific requirements of Rules 23 and 24, F.R.C.P. The result is that the Consul has no standing to intervene in this proceeding.

It follows that the trial court was correct in dismissing the complaint and denying the Consul's motion to intervene.

AFFIRMED.