599 F.2d 322
 20 Fair Empl.Prac.Cas. 52, 20 Empl. Prac.
Dec. P 30,036
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,
v.
GENERAL TELEPHONE COMPANY OF the NORTHWEST, INC., and West
Coast Telephone Company of California, Inc.,
Defendants-Appellants,
Local Union No. 89, International Brotherhood of Electrical
Workers, Defendant.
 No. 78-1849.
 United States Court of Appeals,
Ninth Circuit.
 June 27, 1979.
 
 James R. Dickens (argued), of Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Seattle, Wash., for defendants-appellants.
 Vincent J. Blackwood, Atty. (argued), Abner W. Sibal, Charles L. Reischel, Joseph T. Eddins, Jr., E.E.O.C., Washington, D. C., for plaintiff-appellee.
 Avrum M. Goldberg, William R. Weissman, Alfred M. Wurglitz, Wald Harkrader & Ross, Washington, D.C., Robert E. Williams, Douglas S. McDowell, McGuiness & Williams, Washington, D.C., of counsel for amicus curiae, Equal Employment Advisary Council.
 Appeal from the United States District Court for the Western District of Washington.
 Before GOODWIN and ANDERSON, Circuit Judges, and JAMESON,* District Judge.
 JAMESON, District Judge:
 This interlocutory appeal presents the question of whether the Equal Employment Opportunity Commission (EEOC) has authority under § 706(f)(1) of Title VII, Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e-5(f)(1) (Supp. V. 1975), to seek relief from discriminatory practices affecting a class of individuals without complying with the class certification requirements of Rule 23, F.R.Civ.P.
 Plaintiff-appellee, EEOC, brought suit against the defendants-appellants, General Telephone Company of the Northwest, Inc., its subsidiary, West Coast Telephone Company of California, Inc., and Local Union No. 89, International Brotherhood of Electrical Workers (collectively called General Telephone), alleging that General Telephone discriminated against women employees with respect to maternity leave, access to craft jobs, and opportunities for promotion to managerial positions. EEOC sought injunctive relief and back pay for individuals affected by the challenged practices.[1]
 EEOC moved "the Court for an order bifurcating the issue of class liability from the issue of individual damages pursuant to Rule 42(b), F.R.Civ.P.". On the same day the district court referred the action to a magistrate for trial. General Telephone filed a motion to "dismiss the class action aspects of plaintiff's complaint".
 The magistrate issued a "Report and Recommendation" to the district court, recommending that General Telephone's motion to dismiss be denied. He concluded that the EEOC is not required to comply with Rule 23 for three reasons: (1) the EEOC is not required to comply with Rule 23 in § 707 (42 U.S.C. § 2000e-6) "pattern and practice" suits, and suits under § 706 (42 U.S.C. § 2000e-5) should not be treated differently; (2) the statute itself provides the necessary authority for the EEOC to bring suit on behalf of a class; and (3) it is undesirable and impractical to require the EEOC to comply with Rule 23.
 The district court adopted the magistrate's recommendation and entered an order denying General Telephone's motion to dismiss the class action aspects of the case. The order was later amended to certify the question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and this court entered an order granting permission to appeal. On appeal General Telephone contends that Rule 23 applies to class actions brought by the EEOC under § 706 of Title VII, since neither the Civil Rights Act of 1964 nor the Federal Rules exempt the EEOC from compliance with Rule 23.
 The Civil Rights Act as Amended
 Congress enacted Title VII of the Civil Rights Act of 1964, § 701 Et seq., 42 U.S.C. § 2000e Et seq., to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). " Cooperation and voluntary compliance were selected as the preferred means for achieving the goal." To that end the EEOC was created and a procedure established whereby "state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit". Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1973).
 Title VII of the Civil Rights Act was amended in 1972. The amendments expanded the enforcement authority of the EEOC.[2] Under the 1972 amendment the Commission is empowered to "prevent any person from engaging in any unlawful employment practice". § 706(a), 42 U.S.C. § 2000e-5(a). If the Commission is unable to secure an acceptable conciliation agreement, the Commission is authorized to bring a civil action against any respondent which is not a governmental entity. § 706(f)(1), 42 U.S.C. § 2000e-5(f)(1).[3] In such an action the court may grant injunctive relief and order appropriate affirmative action. Under the amendment the Commission also has "authority to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission". § 707(e), 42 U.S.C. § 2000e-6(e).[4]
 It is clear from the legislative history that the 1972 amendments were intended to increase the enforcement power of the EEOC by authorizing the Commission to bring civil suits. The Senate Labor Committee Report noted that the burden of suits by disadvantaged individuals had effectively precluded recovery in valid claims, and the amendment was an effort to end what had been described as a "modern day David and Goliath confrontation". The purpose of Title VII was to be accomplished "through a system of administrative hearings, Commission decisions and orders, and ultimate court review in appropriate cases the method which has long been utilized by other regulatory agencies". Senate Labor Committee Report, reprinted in "The Equal Employment Opportunity Act of 1972", Bureau of National Affairs, Inc. (hereinafter BNA) at 241.
 A private right of action was retained, but it was "hoped that recourse to the private law suit (would) be the exception and not the rule, and that the vast majority of complaints (would) be handled through the offices of the EEOC or Attorney General as appropriate". Section-by-Section Analysis, Congressional Record, March 6, 1972, BNA at 130 (analysis of § 706(f)(1)).
 Class Actions Under Rule 23
 Rule 1 of the Federal Rules of Civil Procedure states that the federal rules "govern the procedure in the United States district courts in all suits of a civil nature . . . with the exceptions stated in Rule 81".[5] The rules "shall be construed to secure the just, speedy, and inexpensive determination of every action".
 Rule 23(a) provides that, "One or more members of a class may sue or be sued as representative parties on behalf of all," only if the prerequisites therein specified are met.[6] For the proper maintenance of a class action the court must find not only that all of the prerequisites of subdivision (a) are met, but also that the suit satisfies the standards for at least one of the three types of class suits enumerated in subdivision (b). 3B Moore's Federal Practice, § 23.03, at 23-109.
 In determining whether an action may properly be brought under Rule 23, a court must first find (1) that a class exists, and (2) that the named representative is a member of the class he purports to represent. See Wright and Miller, Federal Practice and Procedure: Civil Class Actions, §§ 1760 and 1761; 3B Moore's Federal Practice, §§ 23.04(1) and (2).
 The first prerequisite, existence of a class, presents no problem. Every action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, is in effect a class action. Gay v. Waiters' and Dairy Lunchmen's Union, 549 F.2d 1330, 1333 (9 Cir. 1977) and cases cited therein.
 The second prerequisite, membership in the class, "is inherent in the real party in interest requirement prescribed by Rule 17(a) and is reinforced by the statement in Rule 23(a) that 'one or more members of a class may sue or be sued as representative parties . . .' ". Wright and Miller, Supra, § 1761. The "member of the class" requirement has been strictly applied when a private party seeks to be named as a class representative. See Warth v. Selden, 422 U.S. 490, 502, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); Sosna v. Iowa, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); DuPree v. United States, 559 F.2d 1151, 1153 (9 Cir. 1977).[7]
 On the other hand, if a party has himself suffered an injury, a statute may permit him to sue on behalf of third parties or assert a "public interest". Sierra Club v. Morton, 405 U.S. 727, 737-38, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) and cases there cited. Class actions by a governmental entity are appropriate under certain circumstances, if it is able to satisfy the prerequisite of Rule 23. Hawaii v. Standard Oil Co. of California, 405 U.S. 251, 266, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972). But merely being a governmental representative will not entitle one to qualify as a member of the class. DuPree v. United States, 559 F.2d at 1154.
 Title VII gives the EEOC the standing to sue. The statute explicitly grants the EEOC the authority to assert the rights of others which may have been impaired by the activities in question. See DuPree v. United States, 559 F.2d at 1154. The legislative history makes it clear that the EEOC is a "properly suing party".
 Based solely upon the language of Rule 23, it can be argued that the Rule does not apply to actions brought by the EEOC to enforce Title VII rights. The EEOC obviously is not a member of the "class" it represents. It does not satisfy the requirement of Rule 23(a)(3) that the "claims or defenses of the representative parties" be "typical of the claims or defenses of the class". While individuals affected by an EEOC action may receive specific kinds of relief, the objective of the EEOC is to vindicate the public interest. Moreover, while class action certification requires a judicial determination that the named plaintiffs will adequately represent the class, Congress has already made the determination that the EEOC is an adequate representative of victims of employment discrimination.[8]
 Use of the Class Action under Title VII Statutory Construction
 Logic and precedent dictate that "the starting point in every case involving the construction of a statute is the language itself". Greyhound Corp. v. Mt. Hood Stages, Inc., 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978) quoting Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The statute, 42 U.S.C. § 2000e-5(f)(1), states only that "the Commission may bring a civil action". There is no indication in the statute itself that the Commission must qualify as a class representative when it sues on behalf of a class. Nor is there any provision in either 42 U.S.C. § 2000e-5 or the Federal Rules of Civil Procedure, Rule 81, explicitly exempting the Commission from the Rule 23 requirement.
 The legislative history likewise fails to express clearly an intention that the EEOC comply with or be exempted from the class action certification requirement.[9] Most of the comments with reference to the use of class actions concerned their use by private litigants who before the 1972 amendments were the only parties who could sue on a charge of employment discrimination. Congress expressed its approval of the liberal manner in which the class action requirements had been applied and stated that the 1972 amendment was not intended to "affect the Present use of class actions lawsuits under Title VII in conjunction with Rule 23".[10]
 The Section-by-Section Analysis of § 706 printed in the Congressional Record establishes that (1) under the 1972 amendments legal action by the EEOC is preferred to that by private litigants,[11] and (2) when a private litigant brings a class action suit, the liberal application of the Rule 23 requirement by the courts is the appropriate treatment. See n. 10 Supra. There is no discussion of class action procedure when the EEOC sues on behalf of a class.[12]
 In Congressional debate on other provisions in the 1972 amendments, collateral reference is made to the authority granted to the EEOC to sue and the use of class actions. These statements must be considered in their proper context in determining Congressional intent as to the use of the class action. Most of the remarks were made in debate over the authority of the EEOC under § 707 of the Act, the section which authorized the EEOC to bring suit to curtail a pattern or practice of employment discrimination, a power that had previously been vested in the Department of Justice alone. Senator Hruska offered an amendment which would have retained the authority to bring pattern and practice suits in the Department of Justice.[13] Senators Williams and Javits, floor managers of the Senate bill, spoke against the proposed amendment. The substance of their argument was that the authority granted to the EEOC under § 706 to allow it to seek court enforcement, rather than limiting its power to issuance of cease and desist orders as had been suggested at one point, was very broad and included the power to bring a pattern and practice type suit.[14] They argued against placing such broad power in both the Department of Justice and the EEOC.
 
 
 1
 The only remarks in the Congressional debate which might tend to show that Congress intended the EEOC to comply with the provisions of Rule 23 are those of Senator Javits in arguing against the amendment which would have limited the EEOC's power.[15] He indicated that the EEOC has broad authority to sue on behalf of a group of claimants under § 706 just as the Department of Justice had done in "pattern and practice suits". With specific reference to Rule 23 he noted that this Rule, "entitled Class Actions", gives "the opportunity to engage in the Federal Court in class actions by properly suing parties". He continued: "We ourselves have given permission to the EEOC to be a properly suing party."
 
 
 2
 While Senator Javits' remarks might be interpreted to signify the necessity of complying with Rule 23, they may also be interpreted to show the breadth of suit which the EEOC would be entitled to bring, rather than indicating that the EEOC would be subject to the procedural requirements of the Rule in bringing a class action.[16] In fact, his concluding remarks quite clearly suggest that Senator Javits was simply stating that Congress itself had made the determination of the propriety of a class action which a court must make under Rule 23. We are not persuaded that Senator Javits' remarks manifest a Congressional intent that an action by the EEOC requires a compliance with Rule 23.
 
 Public Policy of EEOC Actions
 
 3
 This court has held that the EEOC is a public agency "charged with the vindication of public policy, not merely with the enforcement of private rights". EEOC v. Occidental Life Insurance Co., of California, 535 F.2d 533, 542 (9 Cir. 1976) Aff'd 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). In Occidental the court was concerned, Inter alia, with the application of a state statute of limitations in an EEOC suit under § 706. We recognized the well established rule that "in a Private civil rights action", where Congress has not provided a statute of limitations, the state statute applicable to similar litigation will be applied; but we concluded that the EEOC in seeking injunctive relief, as well as back pay, "promotes Public policy and seeks to vindicate rights belonging to the United States as sovereign". Id. at 537.[17] We held further that the fact that private parties may benefit from the public "action does not detract from the public nature of (the) proceedings", Id. at 539, and that "(the) enforcement by the EEOC of the objectives of Title VII should not be frustrated because a private charging party may not have had 'standing' to make a particular claim". Id. at 542.[18] Other courts have also recognized that the standing of the EEOC to sue in a § 706 action is not controlled or determined by the standing of the charging party to sue. See, E. g., EEOC v. General Electric Co., 532 F.2d 359, 373 (4 Cir. 1976).
 
 
 4
 In concluding that the EEOC was required to comply with Rule 23 in a § 706 action, the court in EEOC v. D. H. Holmes Co., Ltd., 556 F.2d at 794,[19] said in part:
 
 
 5
 (Section 706) gives EEOC standing to sue under Title VII to the same extent as individuals aggrieved by discrimination in employment. Logically it follows, then, that when EEOC brings a class action suit under § 706, 42 U.S.C. 2000e-5(f)(1) (as an individual aggrieved may do), it does so subject to Rule 23 just as the private litigant in whose place it stands.
 
 
 6
 In other words, the court in Holmes did not recognize the distinction between a private class action by aggrieved individuals and an action by the EEOC "seeking vindication of public rights", which this court under different circumstances clearly recognized in Occidental. 535 F.2d at 542 n. 17.
 
 Actions under § 706 and § 707
 
 7
 Under the present statute, the EEOC may bring civil actions against private employers under § 706, 42 U.S.C. § 2000e-5, or a pattern or practice suit under § 707, 42 U.S.C. § 2000e-6.[20] The Attorney General may bring an action under either section against a public employer.[21] Civil actions based on individual complaints may still be brought by the aggrieved party under § 706.
 
 
 8
 The report of the magistrate adopted by the district court noted that the Attorney General had not been required to comply with Rule 23 in a pattern and practice suit under § 707 and that there is nothing in the statute or legislative history to suggest a different requirement for the EEOC in a § 706 suit. Likewise the court concluded that it would be illogical to apply a different rule with respect to § 706 actions "in view of the seemingly identical nature of the two sections". Appellants argue (1) that compliance with Rule 23 was not addressed in any of the § 707 suits by the Attorney General, and (2) that a distinction continues to exist between § 706 and § 707 actions, since " § 706 is concerned with rectifying individual cases of discrimination".[22] As Senator Williams stated, however, in the Senate debate, (n. 14, supra) there "will be no difference between the cases that the Attorney General can bring under section 707 . . . and those which the Commission will be able to bring" under its enforcement powers pursuant to § 706. An action by the EEOC under each section seeks to vindicate public rights.
 
 
 9
 The Supreme Court in International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)[23] discusses similarities and distinctions between § 706 and § 707 actions. The key distinctions are in the burden and nature of proof required. The Court there compared an individual's § 706 action with the Government's § 707 pattern and practice action. Referring to Franks v. Bowman, 424 U.S. 747, 772, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), a § 706 action brought by individuals, the Court noted that the plaintiffs in Franks by "Demonstrating the existence " of a discriminatory pattern and practice "had made out a prima facie case of discrimination against the individual class members", and that the burden then shifted to the employer to prove that individuals were not in fact victims of previous discrimination. 431 U.S. at 359, 97 S.Ct. at 1866.
 
 
 10
 When the Government, as in Teamsters v. United States, alleges a " systemwide pattern or practice of resistance to the full enjoyment of Title VII rights", the Government must "prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts". It must establish by a Preponderance of the evidence that the discrimination was the "Company's standard operating procedure the regular rather than the unusual practice". 431 U.S. at 336, 97 S.Ct. at 1855.[24] (Emphasis added) With respect to seeking individual relief the Court said in part:
 
 
 11
 When the Government seeks individual relief for the victims of discriminatory practice, a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief . . . As was true of the particular facts in Franks, and as typical of Title VII pattern-or-practice suits, the question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination. . . . The Government need only show that an alleged individual discriminatee . . . was a potential victim of the proved discrimination. As in Franks, the burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons. . . . (T)herefore, every (class member) will be presumptively entitled to relief, subject to a showing by the company that its earlier refusal to place the applicant . . . was not based on its policy of discrimination. Id. at 361-362, 97 S.Ct. at 1867-1868.
 
 
 12
 As noted Supra, it is clear from the legislative history of the 1972 Amendments that Congress preferred an EEOC action to a private action under § 706, expressing the hope that in the future the private lawsuit would be the exception and not the rule. (See n. 10) The advantage of a § 706 class action brought by the EEOC is that it brings before the court the full range of an employer's employment practices which unlawfully discriminate against a class, not piecemeal adjudication of individual claims, and allows the court to consider a variety of factors in formulating the appropriate remedy. The class action device allows the court to see the full implication of recognizing rights or remedies and allows it to determine what outcome would best serve the policies underlying the cause of action. Developments Class Actions, 89 Harv.L.R. 1318, 1353 (1976).
 
 
 13
 The Supreme Court in Teamsters v. United States, supra, recognizes the necessity of applying basic principles of equity in formulating remedies in Title VII cases, saying in part:
 
 
 14
 In devising and implementing remedies under Title VII, no less than in formulating any equitable decree, a court must draw on the "qualities of mercy and practicality (that) have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims." (citations omitted) Especially when immediate implementation of an equitable remedy threatens to impinge upon the expectations of innocent parties, the courts must "look to the practical realities and necessities inescapably involved in reconciling competing interests", in order to determine the "special blend of what is necessary, what is fair, and what is workable". (citation omitted) 431 U.S. at 375, 97 S.Ct. at 1874-1875.
 
 
 15
 The Court lists a number of relevant factors which a trial court should consider in establishing its equitable order, including the number of identifiable victims, consequent extent of necessary relief, number of non-victim employees, the viable alternatives, and the economic circumstances of the industry. Id. at 376 and 376 n. 62, 97 S.Ct. 1843.
 
 
 16
 While there may be differences in the nature and burden of proof in EEOC actions under § 706 and pattern and practice suits under § 707, an action under either section seeks to vindicate public policy. Likewise individual relief may be granted under either action for victims of discriminatory practices. We see no reason why a distinction should be drawn between § 706 and § 707 actions with respect to the applicability of Rule 23.
 
 Rule 23 Certification
 
 17
 It is clear that a compliance with Rule 23 is not expressly mandated by either the Rule itself or the 1972 Amendments authorizing the EEOC to bring a civil suit under § 706. Congress has made the determination that the EEOC is a "properly suing party" and an adequate representative of victims of employment discrimination. The Rule 23(a) certification requirement has been satisfied.
 
 
 18
 In our opinion the other procedures of Rule 23 applicable to a private litigant in a § 706 class action are available to the courts in an EEOC action under the broad equitable powers vested in the courts in § 706(g), 42 U.S.C. § 2000e-5(g),[25] and recognized in Teamsters v. United States,supra, and other cases. (See discussion under Equitable Powers, Infra ).
 
 
 19
 If the private litigant satisfies the prerequisites of Rule 23(a), the Court then must determine whether the suit is maintainable as a class action under one of the subsections of Rule 23(b). Section 706 suits are generally found to be maintainable under Rule 23(b)(2).[26] See Developments Class Actions, 89 Harv.L.R. at 1349. In fact, a civil rights action where a party is charged with discriminating unlawfully against a class is used as an illustration of a Rule 23(b)(2) class action in the Advisory Committee's Notes to the Proposed Rules of Civil Procedure, 39 F.R.D. 69, 102 (1966).[27] Even if the suit contains a request for back pay the case continues to be properly certifiable under Rule 23(b)(2). Franks v. Bowman Transportation Co., supra, 424 U.S. at 751, 755, 96 S.Ct. 1251; Elliott v. Weinberger, 564 F.2d 1219, 1228 (9 Cir. 1977), cert. granted 439 U.S. 816, 99 S.Ct. 75, 58 L.Ed.2d 106 (1978); Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239, 251 (3 Cir. 1975), Cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).
 
 
 20
 Rule 23(c) directs certain procedural protections in a class action depending upon the Rule 23(b) subsection under which the court certifies the action. When an action is certified under Rule 23(b)(2), as § 706 class actions by private litigants generally are, absent class members are not required to receive notice or to have the opportunity to opt-out of the suit. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 n. 14, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Souza v. Scalone, 563 F.2d 385, 386 (9 Cir. 1977); Elliott v. Weinberger, 564 F.2d at 1228-29; Wetzel v. Liberty Mutual Insurance Co., 509 F.2d at 248-49, 256.[28] Due process requires only that the class members be adequately represented. Sam Fox Publishing Co. v. United States, 366 U.S. 683, 691, 81 S.Ct. 1309, 6 L.Ed.2d 604; Hansberry v. Lee,311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Gonzales v. Cassidy, 474 F.2d 67, 74 (5 Cir. 1973). The trial court may in its discretion in a class action certified under Rule 23(b) (2) direct that notice be given under Rule 23(d). Souza v. Scalone, 563 F.2d at 386; Elliott v. Weinberger, 564 F.2d at 1229.
 
 
 21
 Similar procedural safeguards are available in a class action brought by the EEOC even though it is not certified under Rule 23. The trial court need not require notice or allow absent members to opt-out when the EEOC sues, just as it is not required to do so under Rule 23 when a private litigant is the class representative. But the equitable powers of the trial court under Rule 23(d), which apply when a private litigant is the class representative, may be exercised under § 706(g) and the broad equitable powers recognized in Title VII actions.
 
 
 22
 By avoiding the Rule 23(a) certification decision, a step to which the private § 706 class representative is subject, the inevitable challenge to the EEOC as a class representative is avoided. The certification process would be time consuming and costly, and would serve no useful purpose in the final disposition of the case.[29]
 
 Equitable Powers
 
 23
 Broad equitable powers are vested in the federal courts under § 706(g), 42 U.S.C. § 2000e-5(g) of the Act. The courts are empowered to fashion such relief as the particular circumstances of the case may require. Franks v. Bowman Transportation Co., supra, 424 U.S. at 764, 96 S.Ct. 1251. Congress armed the courts with full equitable powers in Title VII cases. It is the historic purpose of equity to secure complete justice. The courts will be alert to adjust their remedies so as to grant the necessary relief. Albemarle Paper Co. v. Moody, 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). The courts "must 'look to the practical realities . . . involved in reconciling competing interests' " in determining the "special blend of what is necessary, what is fair, and what is workable". Teamsters v. United States,supra, 431 U.S. at 375, 97 S.Ct. at 1875.
 
 
 24
 General Telephone is concerned that it may be subjected to subsequent suits on the same issues, possible double payment of damage awards, and inconsistent judicial decisions if the EEOC is not required to qualify as a class representative when it brings this type of action. The EEOC suggests that a district court might properly exercise its discretion to order the issuance of an appropriate notice which informs the charging party and members of the class of the pendency of the Commission's action and their statutory right to intervene. Alternatively, the EEOC suggests that the district court may condition receipt of relief on the waiver of an individual's personal right of action.
 
 
 25
 We agree with the EEOC that courts may fashion appropriate orders to insure that defendants are not subjected to double payment or unnecessarily duplicative litigation. Under their broad equitable powers the courts may prescribe procedures and remedies which are fair and equitable to all parties.
 
 Conclusion
 
 26
 We affirm the order of the district court denying General Telephone's motion to dismiss the class action aspects of this suit.
 
 
 
 *
 The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 It appears from answers to interrogatories that four employees of General Telephone had filed sex discrimination charges with the EEOC. After investigation the Commission found reasonable cause to believe that General Telephone and the other defendants were discriminating against female employees. The EEOC identified as presumptively aggrieved by General Telephone's failure to consider women equally "all female employees, female applicants for employment and women who would have applied but for the alleged unlawful discrimination"
 
 
 [2]
 The Commission does not, however, have authority to adjudicate claims or impose sanctions. Final responsibility for enforcement of Title VII is vested with federal courts. Alexander v. Gardner-Denver Co., 415 U.S. at 44, 94 S.Ct. 1011
 
 
 [3]
 The Justice Department is given the authority to bring suit against a governmental entity which engages in unlawful discrimination. 42 U.S.C. § 2000e-6
 
 
 [4]
 Under the original act Title VII gave individuals the right to bring suits. § 707 gave the Attorney General the authority to bring "pattern and practice" suits. The authority of the EEOC was limited to investigation and conciliation
 
 
 [5]
 Rule 81 does not contain an exemption for suits brought by the EEOC under Title VII
 
 
 [6]
 The prerequisites are that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class". Rule 23(a)
 
 
 [7]
 As the Court said in Sosna v. Iowa, "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." 419 U.S. at 403, 95 S.Ct. at 559
 
 
 [8]
 See Reiter, The Applicability of Rule 23 to EEOC Suits: An Examination of EEOC v. D. H. Holmes Co., 28 Syracuse Law Review 741, 746 (1977)
 
 
 [9]
 In EEOC v. D. H. Holmes Co., Ltd., 556 F.2d 787, 794 (5 Cir. 1977), Cert. denied 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129, the court found "(n) othing in the statutory language or legislative history of Title VII . . . (to) supports the position EEOC advances regarding an action Outside Rule 23". Professor Reiter found the legislative history to be "more ambiguous than the court was willing to recognize" in Holmes. Recognizing that language in the legislative history "may support the position adopted by the Fifth Circuit in Holmes, it is probably more accurate to state that such language is inconclusive on the matter and that in reality Congress did not consider whether the Commission was bound to comply with Rule 23". Reiter, The Applicability of Rule 23 to EEOC Suits: An Examination of EEOC v. D. H. Holmes Co., supra at 753-754
 
 
 [10]
 "In establishing the enforcement provisions under this subsection and subsection 706(f) generally (allowing the EEOC the right to sue as well as retaining the private litigant's right to sue), it is not intended that any provisions contained therein shall affect the Present use of class action lawsuits under Title VII in conjunction with Rule 23 of the Federal Rules of Civil Procedure. The courts have been particularly cognizant of the fact that the claims under Title VII involve the vindication of a major public interest, and that any action under the Act involves considerations beyond those raised by the individual claimant. As a consequence, the leading cases in this area to date have recognized that many Title VII claims are necessarily class action complaints and that, accordingly, it is not necessary that each individual entitled to relief be named in the original charge or in the claim for relief." Section-by-Section Analysis, BNA at 131. (emphasis added)
 
 
 [11]
 "It is hoped that recourse to the private lawsuit will be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC or the Attorney General, as appropriate. However, as the individual rights to redress are paramount under the provisions of Title VII it is necessary that all avenues be left open for quick and effective relief." Section-by-Section Analysis, BNA at 131
 
 
 [12]
 The "present use" of class action (see n. 10) suits involved use by private litigants on behalf of a class. A provision limiting class actions was contained in the House bill and specifically rejected by the Conference Committee. Conference Committee Report, BNA at 122, U.S.Code Cong. & Admin.News, pp. 2137, 2179, 2183 (1972)
 
 
 [13]
 Senator Hruska said in part:
 Section 706 . . . is a complaint-oriented procedure and is not geared to the management of pattern and practice suits which are in the nature of class action suits.
 It seems to me that the manager of this bill would be well advised to eliminate that Section (power to EEOC under § 707 to enforce pattern and practice suits), because it is wrong to put into the Commission's authority the prosecution of what amounts to class actions.
 
 
 [118]
 Cong.Rec. 4080 (1972), BNA at 360
 
 
 [14]
 In responding to Senator Hruska, Senator Williams said in part:
 There will be no difference between the cases that the Attorney General can bring under section 707 as a "pattern and practice" charge and those which the Commission will be able to bring as a result of yesterday's decision to give EEOC court enforcement powers. Frankly, the pattern and practice section becomes a redundancy in law.
 
 
 [118]
 Cong.Rec. 4081 (1972), BNA at 361
 
 
 [15]
 Senator Javits in opposing Senator Hruska's proposed amendment said in part:
 By our decision yesterday (granting the EEOC authority to bring court suits) we gave the EEOC the power to bring suit in big as well as small cases . . .
 These are essentially class actions and if (the Commission) can sue for an individual claimant, then they can sue for a group of claimants.
 It seems to me that this is provided for in the Rules of Civil Procedure in the Federal Courts, and also is inherent in the amendment which we adopted. Under these circumstances it seems to me that this amendment is conclusively dealt with, and whatever may have been the argument which might have obtained in respect to cease and desist orders and the desire to retain this jurisdiction in the Department of Justice when the Commission was going to proceed by cease and desist orders, rather than by suit, has now given way to the fact that the Commission can only proceed by suit. And if it proceeds by suit then it can proceed by class suit. If it proceeds by class suit it is in the position of doing exactly what the Department of Justice does in pattern and practice suits.
 I have referred to the rules of civil procedure. I now refer to Rule 23 of those rules, which is entitled Class Actions and which give the opportunity to engage in the Federal Court in class actions by properly suing parties. We ourselves have given permission to the EEOC to be a properly suing party . . .
 
 
 [118]
 Cong.Rec. 4082 (1972), BNA at 361-362
 
 
 [16]
 Professor Reiter commented: "However, the remarks of Senator Javits are not as conclusive as they might first appear to be. His comments were not made for the purpose of showing that the Commission is bound to follow rule 23 whenever it sues on behalf of a group of persons, but instead were made to show the breadth of a suit which may be brought under either Section 706 or Section 707." Reiter, The Applicability of Rule 23 in EEOC Suits: An Examination of EEOC v. D. H. Holmes Co., supra at 753 n. 72
 
 
 [17]
 Appellants rely heavily on the dissenting opinion in the Supreme Court, which concluded that EEOC suits under § 706 were actions primarily designed to redress injuries suffered by individual claimants and rejected the holding of this court that because the EEOC promotes public policy by its prayer for injunctive relief, it therefore "seeks to vindicate rights belonging to the United States as sovereign". It is true, as appellants contend, that the majority opinion did not expressly address the dissent's characterization of the role of the EEOC in § 706 suits, but it did hold that "it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies". 432 U.S. at 367, 97 S.Ct. at 2455. The Court in the majority opinion clearly recognizes a distinction between actions instituted by the EEOC and private class actions by complainants
 
 
 [18]
 See also EEOC v. Hearst Corp., Seattle Post-Intelligencer, 553 F.2d 579 (9 Cir. 1976), where this court again recognized that "EEOC is a public agency seeking vindication of public rights" and that a "narrower rule" would be applicable in private actions seeking judicial relief for incidents not listed in an original EEOC charge
 
 
 [19]
 Both parties recognize that Holmes is the only case decided by a circuit court which has addressed the precise issue presented in this case. The Fifth Circuit reaffirmed its holding in Holmes in EEOC v. Datapoint Corp., 570 F.2d 1264, 1268 (1978). District courts have held both ways, for a variety of reasons. Cases holding that the EEOC must comply with Rule 23, under § 706 or § 707, include EEOC v. Delaware Trust Company, 81 F.R.D. 448 (D.Del.1979); EEOC v. Akron National Bank and Trust Co., 78 F.R.D. 684 (N.D.Ohio 1978); EEOC v. Page Engineering Co., 17 E.P.D. P 8603 (N.D.Ill.1978). Cases holding to the contrary include EEOC v. Roxene Polymers Co., 10 F.E.P. 61 (W.D.Tex.1975); EEOC v. Lutheran Hospital, 10 F.E.P. 1177 (E.D.Mo.1974); EEOC v. CTS of Asheville, Inc., 13 F.E.P. 852 (W.D.N.C.1976); EEOC v. Pinkerton, Inc., 14 F.E.P. 1431 (W.D.Pa.1977); EEOC v. Raymond Metal Products Co., 17 F.E.P. 206 (D.Md.1978); EEOC v. Schlueter Mfg. Co., 17 F.E.P. 53 (E.D.Mo.1978); EEOC v. Whirlpool Corp., 80 F.R.D. 10 (N.D.Ind.1978); EEOC v. Singer Controls of America, 80 F.R.D. 76 (N.D.Ohio 1978); and EEOC v. Vinnell-Dravo-Lockheed-Mannix, 417 F.Supp. 575, 577 (E.D.Wash.1976), where the court concluded that "while the courts have steadfastly required private litigants to comply with Rule 23, compliance with that rule has not been required where an agency of the government sought class relief from discriminatory employment practices"
 
 
 [20]
 Section 707, 42 U.S.C. § 2000e-6, reads in part:
 (c) Effective two years after the date of enactment of the Equal Employment Opportunity Act of 1972, the functions of the Attorney General under this section shall be transferred to the Commission.
 
 
 [21]
 For further discussion of the effect of the 1972 Amendments and the President's Reorganization Plan No. 1 of 1978 issued pursuant thereto, see United States v. Fresno Unified School District, 592 F.2d 1088 (9 Cir. 1979)
 
 
 [22]
 In Holmes the court suggested that if, for any reason, EEOC is not certified under Rule 23 but still believes a pattern or practice of discrimination exists "its recourse is to file a suit under § 707". 556 F.2d at 792 n. 8
 
 
 [23]
 At the time the suit was filed the Attorney General was authorized to sue to eliminate discriminatory pattern or practice of unlawful discrimination; the suit was filed pursuant to § 707(a), 42 U.S.C. § 2000e-6(a). In 1974 the EEOC was substituted for the United States. Teamsters v. United States, 431 U.S. at 328-329, n. 1, 97 S.Ct. 1843
 
 
 [24]
 At the initial, "liability" stage the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employers discriminating policy. Its burden is to show that such a policy existed. 431 U.S. at 360, 97 S.Ct. 1843
 
 
 [25]
 As the Court stated in Franks v. Bowman Transportation Co., supra, "Congress in § 706(g) vested broad equitable discretion in the federal courts to 'order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate.' The legislative history supporting the 1972 amendments of § 706(g) of Title VII affirms the breadth of this discretion. 'The provisions of (§ 706(g)) are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible . . . ." 424 U.S. at 763-764, 96 S.Ct. at 1264. While § 706(g) does not refer specifically to procedural safeguards, the "broad equitable discretion" conferred on the trial courts would permit their consideration
 
 
 [26]
 Rule 23(b)(2) provides:
 (b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 (2) the party opposing the class had acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;
 
 
 [27]
 See, E. g., East Texas Motor Freight Systems, Inc. v. Rodriquez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), aff'g, 505 F.2d 40, 51 (1974); Franks v. Bowman Transportation Co., 424 U.S. 747, 751, 755, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), which are both Rule 23(b)(2) class actions
 
 
 [28]
 The view has been expressed that mandatory notice would be too inflexible a rule and would add little to a Rule 23(b)(2) class action. 3B Moore's Federal Practice, P 23.55
 
 
 [29]
 See Reiter, The Applicability of Rule 23 to EEOC Suits: An Examination of EEOC v. D. H. Holmes Co., supra at 760. "(D)elays in the ultimate disposition of Title VII cases on the merits, increased motion practice, and further litigation are inevitable as a result of the Court's holding in Holmes while, on the other hand, no significant benefits can accrue as a result of Commission certification."